EMERETTA A. GIBSON

v.

CHARLES C. P. HOLDEN.

*Filed at Ottawa November 14, 1885.*

1. PARTY WALL—*agreement to pay half the cost—whether a covenant running with the land.* A and B, the owners of adjoining lots, made a written agreement that A, in the erection of a building on his lot, might place one-half of the wall upon the lot of B, suitable for a party wall, which should continue such forever, to be kept, maintained, repaired and rebuilt at the equal joint expense of both. The agreement also provided that A should, in the first place, build and pay for the wall, and that before B should use the same, or any part thereof, he should pay A the cost of one-half of the wall, and that the provisions of the agreement should be taken as covenants running with the land, and binding upon the executors, heirs, devisees and assigns of the parties, and all persons having, at any time, any interest or estate in said lots: *Held,* that the agreement of B to pay A one-half of the cost of the wall was not a covenant running with the lot of A, but was personal to A, and that he, and not his assignee, was entitled to receive the sum due from B for his part of the cost, and that the wall, when completed, became the property of each, although A had the right to retain possession of the whole as a security for the payment of the sum due him.

2. Land covered by a party wall remains the several property of the owner of each half, but the title of each owner is qualified by the easement to which the other is entitled, of supporting his building by means of the half of the wall belonging to the other; and this is all that either can convey.

3. COVENANT—*running with the land.* Where a covenant is not of such a nature that the law permits it to be attached to the estate as a covenant running with the land, it can not be made such by agreement of the parties.

4. Whether a covenant will or will not run with the land, does not so much depend on whether it is to be performed on the land itself, as on whether it tends, directly or necessarily, to enhance its value or render it more beneficial or convenient to those by whom it is owned or occupied. If this be so, every successive assignee of the land will be entitled to enforce the covenant.

5. Where, however, the covenant relates to matters collateral to the land, its operation will be confined strictly to the original parties to the agreement.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Charles C. P. Holden and Thomas R. Armstrong, being the owners of adjoining lots in the city of Chicago, on the third day of July, 1872, executed a party-wall agreement, under their respective hands and seals, as follows:

"This agreement, made this third (3d) day of July, A. D. 1872, between Charles C. P. Holden and Thomas R. Armstrong, of the city of Chicago, in Cook county, in the State of Illinois, witnesseth: That whereas, said Holden is the owner of lot twelve (12), and the said Armstrong is the owner of the adjoining lot eleven (11), in E. K. Rogers' subdivision of lots one (1) and two (2), in block five (5), in Duncan's addition to Chicago, and block one (1) in the canal trustees' subdivision of the west half and the west half of the northeast quarter of section seventeen (17), in township thirty-nine (39), north, range fourteen (14), east of the third (3d) principal meridian, and said Holden is about to erect a building upon his property, and said parties are anxious to have a party wall on the line of and resting one-half thereof on the property of each of them; they therefore agree that said Holden may, in the erection of the improvements on his property, place one-half in width of the wall of his building upon the property of said Armstrong, that said wall shall be suitable for a party wall, and shall continue to be a party wall forever. And the said Holden and Armstrong agree to keep, maintain, repair and rebuild said wall, whenever necessary, at the equal joint expense of each. Said wall, when first built, is to be built and paid for by said Holden alone, and whenever said Armstrong uses all or any part of said party wall, he shall first pay to said Holden the cost of one-half of the part of the said wall, such cost to be computed upon the basis of $15 per M. for brick, $20 per cord for rubble stone, $27 per cord for second-course dimension stone, and $32 per cord for lower-footing dimension stone, and eighty-eight cents per foot for coping laid in said wall. The quantity of each kind of material in the half of the said wall

shall be fixed upon by the certificate of the architect and builder of said Holden, if he can produce the same; if not, then such quantities may be fixed upon by arbitrators chosen by each party; but in all cases, said Armstrong shall not use said wall, or any part thereof, until he has actually paid the said Holden for the one-half thereof. The provisions of this agreement shall be deemed and taken to be covenants running with the land, and shall be binding upon the executors, heirs, devisees and assigns of said parties, and shall bind all persons having, at any time, any interest or estate in said land."

This agreement was duly recorded in the recorder's office of Cook county, on July 17, 1872.

After the execution of the agreement, Holden built and paid for the wall therein provided for. Some time subsequently he conveyed his lot, by two deeds of trust, to William H. King, as trustee, and King thereafter conveyed the lot to Emeretta A. Gibson, who now owns it. The title to Armstrong's lot became vested, by *mesne* conveyances, in John H. Kedzie, prior to the date of the filing of the bill herein. Kedzie desiring to build on his lot, and to use a portion of the party wall, filed a bill in the circuit court, making Holden and Mrs. Gibson parties defendant thereto, and setting forth the fact of his purchase of the Armstrong lot, and the party wall agreement, and that said Holden and Mrs. Gibson both claimed the money due under the party wall agreement, and that he was in doubt as to which of them was rightfully entitled thereto, and asking that they be required to interplead, and litigate between themselves as to which of them should receive the same. Answers and replications were duly filed, and on a preliminary hearing the value of the portion of the wall which Kedzie proposed to use was found to be $1378.28, which sum Kedzie deposited with the clerk of the court. This money was claimed by Holden, who remains the owner of the party wall agreement, and who has kept the one-half

of the wall resting on Kedzie's lot insured continuously for his benefit, and by Mrs. Gibson as the owner of the Holden lot. On the final hearing the court found that Mrs. Gibson was entitled to the money, and a decree was entered directing the payment thereof to her by the clerk of the court, from which decree Holden prosecuted his appeal to the Appellate Court for the First District. That court, on hearing, reversed the decree of the circuit court, and remanded the cause, with directions to the circuit court to enter a decree directing the payment to Holden of the money paid into court by Kedzie. This appeal is from that judgment. The controversy is between Holden and Gibson, alone, Kedzie having admitted his liability to pay the one party or the other, and in conformity with the order of court paid his money into court. Errors are assigned presenting the questions discussed in the opinion.

Messrs. KING & PACKARD, for the appellant:

The legal effect of the agreement, when performed, is to give to each of the parties an easement on each other's lot for the support of their respective buildings, which became appurtenant to their several estates, and as such passed with the estates. *Roche* v. *Ullman*, 104 Ill. 11; *Keteltas* v. *Penfold*, 4 E. D. Smith, 122; *Savage* v. *Mason*, 3 Cush. 504; *Maine* v. *Cumston*, 98 Mass. 317; *Standish* v. *Lawrence*, 111 id. 111; *Dorsey* v. *Railroad Co.* 58 Ill. 68; *Hydraulic Co.* v. *Williams*, 66 id. 397; *Ringe* v. *Baker*, 57 N. Y. 209; *Giles* v. *Dugro*, 1 Duer, 331; *Weyman's Ex'rs* v. *Ringold*, 1 Bradf. 40; *Hamilton* v. *Wilson*, 4 Johns. 72; *Hurd* v. *Curtis*, 19 Pick. 462; *Platt* v. *Eggleston*, 20 Ohio St. 419.

Any deed that conveys the land will pass the covenants running with the land. *McConnell* v. *Reed*, 4 Scam. 121; *Butterfield* v. *Smith*, 11 Ill. 486; *Dorsey* v. *Railroad Co.* 58 id. 67.

All covenants which relate to land, and which are for its benefit, run with it, and may be enforced by each successive

assignee into whose hands it may come. *Hydraulic Co.* v. *Williams*, 66 Ill. 397.

Mr. CHARLES F. WHITE, and Mr. M. L. WHEELER, for the appellee:

The agreement for the payment of the money advanced by Holden to build Armstrong's half of the wall, was not a covenant running with Holden's lot, as a benefit thereto. *Bally* v. *Wells*, 3 Wils. 29 ; *Vernon* v. *Smith*, 5 B. & Ald. 1 ; *Spencer's case*, 5 Rep. 16 ; *Joy* v. *Penny Savings Bank*, 115 Mass. 60 ; *Weld* v. *Nichols*, 17 Pick. 543 ; *Hurd* v. *Curtis*, 19 id. 459 ; *Wheeler* v. *Schad*, 7 Nev. 204 ; 1 Washburn on Real Prop. 436-438 ; 2 id. 263 ; *Cole* v. *Hughes*, 54 N. Y. 444 ; *Hart* v. *Lyon*, 90 id. 663 ; *Block* v. *Isham*, 28 Ind. 37.

The obligation of all contracts is ordinarily limited to those by whom they are made, and if privity of contract be dispensed with, its absence must be supplied by privity of estate. *Spencer's case*, 1 Smith's Lead. Cas. 168 ; *Webb* v. *Russell*, 3 T. R. 393 ; *Keppel* v. *Bailey*, 2 M. & K. 517.

If the covenant be not of such a nature that the law permits it to be attached to the estate, it can not become so by agreement of the parties. 1 Washburn on Real. Prop. 438 ; *Masury* v. *Southworth*, 9 Ohio St. 340 ; *Glenn* v. *Canby's Exr's*, 24 Md. 127.

If the covenant to pay was beneficial to Holden without his continuing to be owner of the lot, it was a mere personal covenant, which his grantee could not enforce. *Vernon* v. *Smith*, 5 B. & Ald. 1 ; Platt on Covenants, 534 ; 1 Washburn on Real Prop. 433 ; *Cole* v. *Hughes*, 54 N. Y. 444 ; *Hart* v. *Lyon*, 90 id. 663 ; *Wiggins Ferry Co.* v. *Railway Co.* 94 Ill. 95 ; *Fitch* v. *Johnson*, 104 id. 111.

In order to make a covenant run with the land, its performance or non-performance must affect the nature, quality or value of the property demised, independent of collateral circumstances, or must affect the mode of enjoyment. Taylor

on Landlord and Tenant, (2d ed.) 157, 261; *Masury* v. *South-worth*, 9 Ohio St. 340; *Wiggins Ferry Co.* v. *Railway Co.* 94 Ill. 91.

They must affect the land or the mode of occupying and enjoying it immediately, and not remotely. *Mayor of Congleton* v. *Patterson*, 10 East, 130; Sheppard's Touchstone, 161; 2 Greenleaf's Cruise on Real Prop. 753, note.

The right to demand payment of the money for Armstrong's half of the wall, did not pass as an appurtenance to the Holden lot by his deed to King, and King's deed to Mrs. Gibson. *Harris* v. *Elliott*, 10 Peters, 25; 3 Washburn on Real Prop. 340, 341; *Woodhull* v. *Rosenthal*, 61 N. Y. 382; *Doliff* v. *Railroad Co.* 68 Maine, 173; *Bliss* v. *Kennedy*, 43 Ill. 67.

The rule is well settled that only such things pass by deed, as appurtenant to real estate, as are necessary to the enjoyment of the estate conveyed. 3 Washburn on Real Prop. 340.

As incident to the grant of an easement, nothing passes but what is requisite to the fair enjoyment of the easement. *Lyman* v. *Arnold*, 5 Mason, 198; *Ballard* v. *Tyson*, 1 Taunt. 279; *Cowlin* v. *Higginson*, 4 Mees. & W. 245; *Pomfret* v. *Becroft*, 1 Sandf. 321.

The only easement attached to a party wall is the easement of support. *Ingalls* v. *Plamondon*, 75 Ill. 118.

The party wall, when constructed, became, under the terms of the agreement, and by operation of law, a part of the realty of Holden and Armstrong, and they owned the same, not as tenants in common, but in severalty. Each had title in severalty to the one-half on his lot, with an easement of support in the other half. *Matts* v. *Hawkins*, 5 Taunt. 20; *Cubett* v. *Porter*, 8 B. & C. 257; *Block* v. *Isham*, 28 Ind. 37; *Ingalls* v. *Plamondon*, 75 Ill. 118; *Hedricks* v. *Stark*, 37 N. Y. 108; *Eno* v. *Del Vecchio*, 4 Duer, 61; *Sherred* v. *Cisco*, 4 Sandf. 480; *Thompson* v. *Summerville*, 16 Barb. 473; *Partridge* v. *Gilbert*, 15 N. Y. 614; *Brooks* v. *Curtis*, 50 N. Y. 639; *Joy* v. *Penny Savings Bank*, 115 Mass. 60; *Goodrich* v. *Lincoln*, 93 Ill. 359.

The agreement to pay the money advanced by Holden for Armstrong to build his half of the party wall, was a personal contract with Holden, and the right to enforce it is a chose in action, and was incapable of assignment, and did not pass by Holden's conveyance to Mrs. Gibson. *Cole* v. *Hughes,* 54 N. Y. 444; *Hart* v. *Lyon,* 90 id. 663; *Todd* v. *Stokes,* 10 Pa. St. 155; *Gilbert* v. *Drew,* id. 219; *Dannaker* v. *Riley,* 14 id. 436.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The language of this agreement very clearly shows that this wall was built as a party wall, and to remain such. It says, after the recitals showing the intention of Holden to build the wall, and the mutual desires of the parties that it shall be a party wall on the line between their lots, one-half of the wall resting on the ground of each:. "They therefore agree that said Holden may, in the erection of the improvements on his property, place one-half in width of the wall of his building upon the property of said Armstrong, that said wall shall be suitable for a party wall, and shall *continue* to be a party wall forever." The word "continue," manifestly means from the time of the building of the wall, for there is no other period indicated to which it can have reference. This view is confirmed by the further language, "and the said Holden and Armstrong agree to keep, maintain, repair and rebuild said wall." When? The language of the agreement, continuing, answers, "whenever necessary,"—that is to say, at any time from the building of the wall,—and this is to be done "at the equal joint expense of each." Had it been intended that the ownership of the wall should be in Holden until such time as Armstrong should pay him for one-half, it would have been the duty of Holden, alone, until that time, to have kept, maintained, repaired and rebuilt the wall; and we are bound to presume that had such been

the intention, language expressing that the wall should be a party wall *when* or *on condition that* Armstrong should pay for one-half, and that *thereafter* the wall should be kept, maintained, repaired and rebuilt at the equal joint expense of each, would have been used instead of that which was used. The sharing of the burdens of repair, rebuilding, etc., jointly, is an obvious result of a joint title or ownership, and could never be presumed, in the absence of language admitting of no other reasonable construction, as intended to apply to property whereof the title or ownership was in but one of the parties.

While, however, it is clear that the title or ownership of the wall is joint the moment it is built, and that it so continues, it is also clear that in order to secure Holden for his advances on the joint account in building the wall, the sole possession of the wall shall be in Holden, alone,—or, in other words, that Armstrong shall not be allowed to use the wall until he shall repay those advances. Armstrong has title to one-half the wall, but Holden retains the possession of the whole, as a security for his debt. There is no language used applicable to a sale. When Armstrong desires to use the wall, he is not to pay for one-half its value, or a sum to be agreed upon as the price of one-half of the wall, as we should expect in case of a sale,—he is simply "to first pay to said Holden the cost of one-half part of said wall." Holden's necessities for the immediate use of the wall are such that he is willing and consents to loan, in effect, to Armstrong, so much money for that indefinite time. )Cases, therefore, where parties are, by the deed under which they take title, given one-half of a wall as a party wall *when* or *upon condition* of making payment, and cases in which the owner of one lot has licensed the owner of the adjoining lot to build a wall for himself, resting one-half of it on each lot, and reserving the privilege of thereafter purchasing one-half the wall as a party wall, are not analogous. In all such cases the

title to the whole wall may be regarded as appurtenant to the lot of the builder, and so passing, by every conveyance of it, until a severance of the half by the payment of the purchase money. The sale of the half of the wall does not occur, nor the title to it pass, in those cases, until the payment is made; and so necessarily it is, constructively, a sale by the assignee of so much of the wall. His right to the purchase money is not because he is the assignee of a covenant running with the land, but because he is the vendor of so much of the wall. Such, in effect, as we understand them, are *Weyman's Executors* v. *Ringold,* 1 Bradf. 41, *Maine* v. *Cumston,* 98 Mass. 317, *Burlock* v. *Peck,* 2 Duer, 90, and *Keteltas* v. *Penfold,* 4 E. D. Smith, 122, cited and relied upon by counsel for appellant; and without pausing here to analyze carefully each of those cases, we content ourselves by saying that if we have misapprehended the scope and effect of these decisions, or either of them, in this respect, and it shall be found that it has been ruled holding that the right to receive payment for the construction of so much of the party wall as rests upon the lot of another passes as appurtenant to the adjoining lot of the builder, by his conveyance of that lot, then, for the reasons hereinafter stated, we do not concur with such reasoning, nor recognize it as obligatory upon us to adopt and follow it in the present case. We said in *Ingals* v. *Plamondon et al.* 75 Ill. 123: "Land covered by a party wall remains the several property of the owner of each half, but the title of each owner is qualified by the easement to which the other is entitled of supporting his building, by means of the half of the wall belonging to his neighbor." We then referred to authorities in vindication of the principle, and we presume its accuracy is not questioned.

All, therefore, that Holden could have conveyed to another was the title to his lot, and the easement in the half of the wall resting upon the lot of Armstrong for the support of his half of the wall. We think it quite clear, from the language

of the agreement, that it was never intended that more than this should pass by any conveyance of the lot of Holden. Counsel for appellant, however, contend that the concluding paragraph of the agreement shows that it was intended that the right to receive payment for constructing the half of the wall resting on the lot of Armstrong should pass by conveyance as an appurtenant to the lot of Holden. That paragraph reads: "The provisions of this agreement shall be deemed and taken to be covenants running with the land, and shall be binding upon the executors, heirs, devisees and assigns of said parties, and shall bind all persons having at any time any interest or estate in said land." It must be apparent to all that this language was not intended to be taken literally, for it would be absurd to suppose that an assignee of Armstrong's lot should be bound for the payment of the one-half of the cost of the wall resting on that lot after the amount had once been paid. And it would seem equally apparent that it could not have been intended that payment should be made to the lot owner, as such, unless the payment would necessarily have the effect to benefit the lot in some way. Unless such a payment, or rather a payment having such an effect, was intended, there is no conceivable reason why Holden should have desired that one debt rather than another should be paid to his assignee. If the debt could not have that effect, why should he want it transferred to his assignee at all? Why should a debt be transferred by a sale of real estate, unless of that character that it would necessarily affect the value or quality or the enjoyment of the real estate? Moreover, where the covenant is not of a nature that the law permits it to be attached to the estate as a covenant running with the land, it can not be made such by agreement of the parties. *Masury* v. *Southworth*, 9 Ohio St. 340; *Glenn* v. *Canby's Executors*, 24 Md. 127; *Bree* v. *Marshall*, 3 C. E. Greene, 337; 4 id. 537; Notes to *Spencer's case*, vol. 1, pt. 1, Smith's Leading Cases, (7th Am. ed.) 168.

Our conclusion therefore is, that the fair construction of this clause of the agreement will not warrant us in holding that it was intended the right to receive payment for the half of the cost of the wall should pass by a conveyance of Holden's lot, unless the language of the former part of the agreement is susceptible of that construction, and that it was only intended by this clause that such covenants should run with the land of both parties, or of either party, as were, when considered with reference to their subject matter, practically adapted to the accomplishment of that end, and susceptible, legally, of being enforced as such. It is said by the editors of Smith's Leading Cases, in the notes to *Spencer's case*, vol. 1, pt. 1, (7th Am. ed.) p. 219: "Whether a covenant will or will not run with the land, does not so much depend on whether it is to be performed on the land itself, as on whether it tends directly or necessarily to enhance its value or render it more beneficial or convenient to those by whom it is owned or occupied, for if this be the case, every successive assignee of the land will be entitled to enforce the covenant." And the same authority also says, page 217: "When, however, the covenant relates to matters collateral to the land, its operation will be confined strictly to the original parties to the agreement." This doctrine received the approval of this court in *Wiggins Ferry Co.* v. *Ohio and Mississippi Ry. Co.* 94 Ill. 95. Applying the principle here, it seems impossible to hold that the right to receive payment for the cost of one-half the wall ran with the land. One easement was, undoubtedly, the consideration of the other. The party wall was to be built at the joint expense of the lot owners, but by what particular person the materials were to be procured and brought upon the ground, and the mechanical operation of laying up the wall performed, or by whom this was to be superintended, or by whom the money was to be advanced to make payments, were questions entirely independent of and apart from the ownership of the wall and the character of easement which

14—115 ILL.

the lot owners had in the part of the wall resting on the lots of each other. The materials might have been furnished, the wall built, and the entire amount paid therefor advanced by a stranger. This was the mere furnishing of so much materials and doing of so much work for so much money, or the advancing of so much money to be repaid again, and created only the relations of employer and employe, and borrower and lender. The fact that Holden was furnishing materials and doing work for himself on his half of the wall, could, by no reasonable construction, affect his relations in regard to the other half of the wall which he was building for Armstrong. There is no claim that the money to be paid by Armstrong, or for his half of the wall, was to be expended upon the lot of Holden, or upon the wall generally, or that it was to be used in any particular way. As to Holden, the money, when collected, would be like all other money. An assignee would be no more benefited by receiving this money than by receiving money from any other source, or on any other account. To benefit him as land owner, it must in some way affect the value or the use of the land. It is not enough that it simply enriches the assignee by that many dollars. Whether this money should be paid or not, the condition of the wall and of the lot of Holden would remain, in every respect, precisely the same. It would be difficult to give a better illustration of a purely collateral contract or covenant, so far as Holden's rights are affected, than this undertaking to pay for the cost of one-half of the wall.

The identical question here presented was before the Court of Appeals of New York, in *Cole* v. *Hughes*, 54 N. Y. 444, and *Hart* v. *Lyon*, 90 id. 663, and before the Supreme Court of Indiana, in *Block* v. *Isham*, 28 Ind. 37, and those courts ruled that the right to compensation was personal to the builder, and did not pass by a grant of his land. The same thing, in principle, was also ruled by the Supreme Court of Massachusetts, in *Weld* v. *Nichols*, 17 Pick. 538, *Joy* v. *Boston*

*Penny Savings Bank*, 115 Mass. 60, and by the Supreme Court of Pennsylvania, in *Davis* v. *Harris*, 9 Pa. St. 503, *Gilbert* v. *Drew*, 10 id. 219, *Todd* v. *Stokes*, id. 155, and *Bell* v. *Bronson*, 17 id. 363.

Counsel for appellant object that the Pennsylvania cases are predicated upon a statute passed in 1721, which provides "that the first builder shall be reimbursed for one moiety of the charge of the party wall, or for so much as the next builder shall use, before he breaks into the wall." We agree with the courts in *Cole* v. *Hughes* and *Block* v. *Isham, supra,* that there is nothing in the statute that is not in the agreement in the present case. The statute gave, as the agreement here gives, the right to compensation, and the courts hold that it is not of such a nature as to pass by a grant of the land. See, also, 2 Washburn on Real Property, 262, 263.

Counsel for appellant strenuously insist that the ruling in *Roche* v. *Ullman*, 104 Ill. 11, authorizes the plaintiff here to recover. We do not think so. That case shows that had an action been brought against Kedzie, he would have been held liable, but it goes no further. Kedzie took under the agreement and with notice of it, and before he can have the benefit of the agreement he must comply with its terms. His lot is charged with the burden of paying,—that is, in the sense that the wall can not be used for the benefit of his lot until he does pay; but that burden is not to be discharged for the benefit of the adjoining lot, or so, in anywise, to affect it. Like a mortgage or deed of trust, the land is, in the sense mentioned, burdened with the payment of a debt, but its payment affects no other land beneficially.

We see no cause to disturb the judgment of the Appellate Court. It is therefore affirmed.

*Judgment affirmed.*