HILAND SOUTHWORTH V. E. L. PERRING.

No. 14,254.   (81 Pac. 481.)

SYLLABUS BY THE COURT.

PARTY WALL—*Covenant Running with the Land.*  A contract
made between the respective owners of adjoining lots, ex-
pressed to be binding upon their heirs and assigns, providing
that the wall of a building one of them is about to erect shall
be placed upon the dividing line, and that when the other
builds he shall use it as a party wall and pay him half its
value, in effect creates covenants running with the land of
each party; and where after such first building is erected
conveyances are made of each lot, the subsequent owner of
the vacant lot who builds thereon and makes use of the party
wall is required to make payment therefor to the owner of
the lot first built upon.

Error from Dickinson district court; OSCAR L.
MOORE, judge.  Opinion filed July 7, 1905.  Reversed.

*Hurd & Hurd,* and *Humphrey & Humphrey,* for
plaintiff in error.

*S. S. Smith,* for defendant in error.

The opinion of the court was delivered by

MASON, J.:  In 1885 the respective owners of two
adjoining lots entered into a written contract, by the
terms of which it was agreed that one of them, who
was about to erect a brick-and-stone building upon his
lot, should place one of the walls upon the dividing
line, and that when the other should build he would
use this wall as a division wall, and pay him half its
value.  The agreement concluded with these words:

"The parties hereto bind and obligate their heirs,
executors, administrators and assigns to the fulfilment
of all the terms and covenants of this agreement."

The building was accordingly erected.  In course of
time the lot on which the building stood was conveyed
to Hiland Southworth and the other lot to E. L.

Perring. In 1901 Perring built upon his property, and made use of the party wall. Southworth then demanded of him pay for half its value, and upon payment's being refused brought action to enforce it. Judgment was rendered against the plaintiff, who prosecutes error.

As appears from this statement the questions involved are: (1) Whether the right to compensation provided for in the contract, under the circumstances stated, remains with the individual who constructed the wall, or has passed to Southworth in virtue of his being the owner of the lot upon which the first building was erected at the time the wall was made use of by the adjoining proprietor; (2) whether the liability to pay a part of the value of the wall still exists against the original owner of the second lot, who made the contract, or has shifted to its present owner, who made use of the wall. Similar contracts have been a fruitful source of litigation, and the question whether they are to be treated as purely personal to their makers or may be regarded as creating covenants running with the land is one upon which there is much diversity of opinion and conflict of authority. The adjudicated cases are so completely gathered and so thoroughly digested in a note to *Cook v. Paul,* 4 Neb. (unofficial) 93, 99, 93 N. W. 430, published in volume 66 of the Lawyers' Reports, Annotated, page 673, that there would be little purpose in attempting to add to the presentation there made of the state of the law on the subject, as disclosed by the decisions of the courts. An editorial note on the subject in volume 89 of the American State Reports, page 941, gives a concise but comprehensive review of the arguments and authorities by which the various theories adopted are supported, introduced by the following paragraph:

"The question whether the grantee or assignee of the builder can recover on a covenant for contribution for the cost of a party wall, and whether the grantee or assignee of the covenantor is liable on such cove-

nant, is one upon which much learning and research have been spent, and upon which the decisions are in irreconcilable conflict, and almost equally divided. Even in the same state different results have been reached under facts almost similar, and prior rulings are distinguished in a manner beyond the comprehension of the ordinary person."

Collections of pertinent decisions are also to be found in volume 38 of the American Digest, Century edition, columns 1907-1912, and in volume 22 of the American and English Encyclopedia of Law, pages 255, 256. An English case, decided in 1900 (*Irving v. Turnbull,* 2 Q. B. 129), bears upon some aspects of the matter.

In New York the extreme position is maintained that a contract of this charcter is so entirely personal in its nature that it cannot be made to run with the land in any aspect, even if the parties desire it and clearly so express themselves. This view is thought by the author of one of the notes cited to be the result of a misinterpretation of an early case. (66 L. R. A. 677, 678.) In Illinois it is held that the obligation to pay for the wall whenever used runs with the land of the non-builder, and lodges against the owner who erects the second building and joins to the wall, but that the right to receive the compensation is personal and remains with the individual who built the wall, notwithstanding any agreement the parties may have made to the contrary, on the ground that the agreement in this respect is of such a nature that the law does not permit it to be attached to the real estate. (*Gibson v. Holden,* 115 Ill. 199, 3 N. E. 282, 56 Am. Rep. 146.) Elsewhere, however, it is generally conceded to be competent for the parties to make the privilege as well as the duty created by such an agreement follow the ownership of the land, and the disputed question in each case is whether they have done so, the conflict of authority arising upon the interpretation of the language employed. Different conclu-

sions as to the intentions of the parties are reached by different courts upon substantially the same state of facts, according to the view taken of the general nature of such contracts. A court that regards them as closely related to the real estate, and inherently adapted to run with it, will be persuaded that it was the intention of the parties that they should do so upon much less evidence than would convince another court that considers them as essentially personal.

In the brief of the defendant in error much reliance is placed upon the opinion in *Cook v. Paul, supra,* which was also referred to approvingly by the trial court in announcing its judgment. There, after an extended discussion covering the whole scope of the inquiry, the conclusion is reached that—

"the more accurate statement of the law is still the one announced by the learned editor of the American Decisions [Mr. Freeman] in volume 92, page 301, of that series, as follows: 'The majority of the authorities maintain that these covenants are not of the nature of covenants running with the land, and that the grantees of the original parties cannot, by reason of their holding the adjoining lots, take advantage of the benefit, or be subjected to the burden, of the covenant to pay for one-half of a party wall, but that the right of recovery is personal to the builder, and the obligation to pay, except in certain cases, rests upon the covenantor only; and an agreement of the parties that the covenant shall be binding upon their heirs or assigns, etc., or even that it shall run with the land, is ineffectual.' "

The cogency of the reasoning employed in that case of course cannot be affected by any outside consideration, but its force as an authority is seriously impaired by a later expression of the same court (*Loyal Mystic Legion v. Jones,* 102 N. W. [Neb.] 621, 623), where this language was used:

"In a later case—*Cook v. Paul,* 93 N. W. (Neb.) 430, 66 L. R. A. 673, not officially reported—it is said [quoting the extract just given]. This doctrine is broader than the rule laid down by the prior decisions

of this court. *Cook v. Paul* is one of the class of cases known in this state as 'unofficial'; and, as is said by Holcomb, C. J., in *Flint v. Chaloupka,* 99 N. W. (Neb.) 825, speaking of opinions of this character, 'the court is not necessarily bound by anything said therein, nor to the propositions of law enunciated on which the conclusions are predicated. It approves only the conclusions.' We do not, therefore, consider it as in any way establishing the legal proposition contained in the opinion. In most of these cases the question was as to the liability of the party using the wall, and the view taken by the court was that the contract, so far as affects the obligation of the subsequent user of a party wall to pay for the same, usually runs with the land. But in the instant case the question is different. It is, To whom is the money payable? . . . It will be observed that this court has heretofore adhered to the doctrine that such covenants run with the land, at least so far as the obligation of the user of the wall to pay for the same is concerned."

The court then decided that under the terms of the contract there involved the payment was required to be made between the persons owning the lots when the second building was constructed. As suggested in that case, the question whether the right to receive payment on account of the party wall passes with successive grants of the land is a more difficult one than whether the obligation to make the payment devolves upon the person who joins to the party wall. It is easier to find support in reason and authority for holding that the obligation to make payment runs with the land than for holding that the right to receive payment does. The important inquiry in the present case is, therefore, whether Southworth is entitled to collect payment for half the value of the wall. If he is not, the judgment must be affirmed. If he is, the same considerations that justify that conclusion will necessarily compel also the determination that Perring is the person who must make the payment, and the judgment must be reversed.

In the note in volume 89 of the American State Re-

ports, page 941, to which reference has already been made, the reasoning in support of the doctrine that the right to demand payment from the second builder passes with each conveyance of the land of the first builder is thus presented:

"It seems to us that the more reasonable rule is that an agreement between the owners of adjoining premises, whereby one is to build a party wall, one-half on the land of each, and the other to pay for one-half of its construction when he uses the wall, creates cross-easements as to each owner, running with the land, with or without notice to the grantee, and is binding on all persons succeeding to the estates to which such easement is appurtenant, and that a purchaser of the estate of an owner so contracting must be required to pay one-half of the cost of the wall, if it is unpaid for at the time of his purchase, and he afterward avails himself of its benefits [citing cases]. Under this view the title to the whole wall may be regarded as appurtenant to the lot of the builder, and so passes by every conveyance of it until the severance of the one-half by the payment of the purchase-money. The sale of the one-half of the wall does not occur, nor the title to it pass, until the payment is made, and thus, necessarily, it is constructively a sale by the assignee of so much of the wall. His right to the purchase-money is not because he is assignee of a covenant running with the land, necessarily, but because he is a vendor of so much of the wall, for which the party using it is liable."

With regard to the effect of the decisions bearing upon the question the note continues:

"Quite a respectable number of well-considered cases maintain the doctrine that the right to that portion of a party wall resting on the lot of an adjoining owner is not personal to the owner of the lot on which the building is erected, but one running with the land, and that a conveyance of the lot on which the building is erected passes to the grantee the right to recover of the adjacent owner the value of one-half of the wall when used by him [citing cases]. And this rule has been enforced especially under agreements wherein

Southworth v. Perring.

the covenantor has covenanted for himself, his executors, heirs, or assigns." (Page 942.)

These expressions are perhaps entitled to peculiar weight from the fact that the note in which they occur bears internal evidence of being a revision of the note in volume 92 of the American Decisions, from which was taken the extract quoted in *Cook v. Paul, supra.*

Without attempting to declare what general principles relating to the question presented are sustained by the greater number of decisions, we shall decide it upon these considerations: We regard contracts of the character of that here involved as in their nature so related to the real property affected, and so adapted to impose their obligations and bestow their benefits upon the successors in title of the landowners by whom they are made, that the purpose that they shall have that effect is readily to be inferred from the employment of language having any substantial tendency in that direction. In the present case we hold that the use of the clause making the terms of the contract binding upon the heirs, executors, administrators and assigns of the parties sufficiently indicates that intention. What the effect of the omission of that provision might have been we do not now determine.

The judgment is reversed, with directions to render judgment for the plaintiff.

All the Justices concurring.

---

OPINION DENYING A PETITION FOR REHEARING.

No. 14,254 · (81 Pac. 785.)

*Per Curiam:* In a motion for a rehearing the defendant in error very forcibly urges a reconsideration of the decision in this case, contending that the conclusion reached by the court is not only against the weight of authority but is supported by but one case—that of *Sharp v. Cheatham,* 88 Mo. 498, 57 Am. Rep. 433. The motion includes a review of the cases cited

in that part of the editorial note from volume 89 of the American State Reports, page 941, which is quoted in the foregoing opinion. In the course of this review it is pointed out that some of these cases do not at all sustain the proposition in support of which they are cited; that others—those from New York and Illinois —are against the law as it is now established in those states; that others—those from Pennsylvania and Iowa—are controlled by special statutes; that others originate in contracts containing express provisions that their covenants run with the land; that one of them—an Ohio case—is based in part upon New York decisions that have since been overruled. The note in question was quoted chiefly for its clear statement of the argument in favor of what may be called the cross-easement theory. In this view it is unaffected by the considerations just noted, but so far as it purports to exhibit the law as settled by adjudication its force is to some extent diminished by them. It must be conceded also that none of the cases in which the right to receive compensation from one using a party wall already built is held to pass to the grantee of the builder arose upon a contract precisely like the one here involved. Nevertheless the fact remains that the weight of authority supports the view that party-wall contracts may be so drawn as to have this effect, and that in each case the question is whether such is the intention of the parties, as shown by the language used. Moreover there is abundant authority for the proposition that this intention may be inferred from a provision that the money shall be paid to the first builder or his assigns. (See 66 L. R. A. 678, note, and *Platt v. Eggleston et al.,* 20 Ohio St. 414.) In *Loyal Mystic Legion v. Jones,* 102 N. W. (Neb.) 621, the use of the word "grantees" in this connection is held to be evidence of such intention, while the word "assigns" is said not to be sufficient for that purpose, because it is better adapted to describe one who acquires

personalty by assignment than one who takes realty by deed. It is true that "grantees" is a less equivocal word than "assigns," but the latter is held rather to indicate the successor in title to real property than the assignee of a personal right. In Bouvier's Law Dictionary (title "Assigns") it is said that it is now seldom used except in the phrase in deeds "heirs, executors, and assigns." In *King v. Wight,* 155 Mass. 444, 446, 29 N. E. 644, it was said:

"It is expressly provided that the agreement shall be binding on them [the parties] and their heirs and assigns forever, meaning clearly that the heirs and assigns of each shall succeed with the estate to the same rights and liabilities under the agreement which their predecessor in title had or might have."

In *Adams v. Noble,* 120 Mich, 545, 79 N. W. 810, the court said:

"It is insisted . . . that a distinction is to be made between the cases where the covenant to reimburse is personal to the party who built the wall, and those where the covenant to reimburse is by one party, his heirs, executors, administrators, or assigns, to the other party, his heirs, executors, administrators, or assigns, and that this contract belongs to the last-named class. It is urged that, when this distinction is borne in mind, the conflict between the authorities is more apparent than real. It is difficult to harmonize all the authorities, but we think they may fairly be divided into two classes—one class holding that the covenant for payment is personal, and does not run with the land, when it is apparent from the contract that the payment should be made to the party building the wall, and there are no words indicating that the right to receive payment shall pass to his assigns; the second class holding that the covenant runs with the land, and passes to the purchaser or assignee, when the contract evinces such intention, and where the language used is between the parties and their assigns, and the contract declares the covenant shall be perpetual, and binding upon the parties and their heirs and assigns."

Likewise it was said, in *Conduitt v. Ross,* 102 Ind. 166, 170, 26 N. E. 198:

"It is apparent, too, that it was the intention of the parties that the covenant to pay should run with the land. The words used in that connection are those usually and aptly employed for the purpose: 'John Hauck hereby binds himself, his heirs, executors, administrators and assigns, that whenever, after the erection of said wall or walls by the party of the second part, said Hauck, his heirs, executors, administrators or assigns shall, in any building he or they may erect,' etc., they will pay, etc. A continuing covenant may exist without the word 'assigns,' or 'grantees,' but when these or equivalent words are used they become persuasive of the intent of the parties."

The effect of the concluding paragraph of the contract, which is quoted in the opinion, may be better determined upon a consideration of the entire instrument. It reads as follows:

"This agreement, made and entered into this 22d day of July, A. D. 1885, by and between G. W. C. Rohrer, and Maggie A. Rohrer, his wife, J. E. Bonebrake, and Elvira A. Bonebrake, his wife, of Abilene, Kan., parties of the first part, and W. S. Hodge and Laura T. Hodge, his wife, of Abilene, Kan., parties of the second part:

"Witnesseth, that whereas, the parties of the first part are the owners of lot seven (7), and the parties of the second part are the owners of lot six (6), in Henry, Hodge & Reed's subdivision of Thompson & McCoy's addition to the city of Abilene, Dickinson county, Kansas, now, therefore, the parties of the first part, for and in consideration of the promises and agreements of the parties of the second part hereinafter contained, hereby grant and give to the parties of the second part the right and privilege to build the west wall of a two-story brick-and-stone building on the line separating said lots in said subdivision from each other—that is to say, one-half of said west wall of said building to be located on said lot seven (7). Said wall shall be of the following material and dimensions, to wit: The base shall be of stone, and be three

feet wide and ten feet high; the first-story wall shall be brick, and be sixteen inches wide and sixteen feet high; the second-story wall shall be brick, and be twelve inches thick and ten feet high; all of said wall to extend the full length of said lots on said separating line.

"And the said parties of the first part further promise and agree that when they shall build on their said lot seven (7) they will pay to the said parties of the second part one-half the value of said west wall, and use the same as a division wall; the value of the same to be fixed by three appraisers, to be selected, one by the parties of the first part, one by the parties of the second part, the two so chosen to select a third.

"The parties of the second part, for and in consideration of the promises and agreements of the parties of the first part, as herein contained, do hereby promise and agree to build said wall on the location, and of the materials and dimensions, hereinbefore described and set out, and, when said parties of the first part build on their said lot, to take one-half of the value of said wall, to be fixed and determined as hereinbefore provided, and permit the said parties of the first part to use the same as a division wall.

"The parties hereto bind and obligate their heirs, executors, administrators and assigns to the fulfilment of all the terms and covenants of this agreement."

If the last paragraph, as contended by the defendant in error, means only that the personal obligations assumed by the parties shall be binding upon their respective estates, then, as said in the motion for a rehearing, it expresses absolutely nothing that the law does not imply, and is utterly without force. It should not be so treated if there is a reasonable and natural construction available that will give it some effect. We interpret it as in substance a stipulation that the covenants of the agreement shall run with the land. It is not expressly said that the benefits of the contract shall accrue to the heirs, executors, administrators and assigns of the builders of the wall, but there is an express reference to the heirs, execu-

tors, administrators and assigns of all the parties, and the provision that all the terms of the contract shall be binding upon them clearly indicates an intention to establish a permanent status between the respective owners of the two lots with reference to the party wall. In the body of the contract the reading is that the first parties shall pay the money to the second parties, no mention being made of the heirs, executors, administrators or assigns of either. But the second parties affirmatively agree not only to build the wall according to certain specifications but to take one-half the value, to be fixed in a prescribed manner, and to permit the first parties to use it as a division wall. These agreements are by the very letter of the contract made binding upon the heirs, executors, administrators and assigns of the second parties. This shows that it was within the contemplation of the parties that the payment should be made to the successors in interest of the builders of the wall quite as explicitly as though their assigns were mentioned each time they were themselves referred to in the contract.

The case of *Thomson v. Curtis,* 28 Iowa, 229, although turning upon the interpretation of a statute, is not without value here as illustrating a view of the relations of adjoining owners with regard to a party wall, whether arising from statute or contract. The statute there construed provided that the owner of a building lot might rest one-half of his wall on his neighbor's land, and that the neighbor should have the right thereafter to make it a wall in common by paying half its value to the "person who built it." In the opinion it was said:

"We hold that the right to the half of the wall resting upon the adjoining lot is, under our statute, a right running with the land. This holding is grounded upon both the language and the reason of the law. . . . A party who is not a neighbor—an adjoining owner—has no right to rest a half-wall upon another's

property.   This right exists only in a neighbor, and when he ceases to be a neighbor the right *in him* must cease also, or pass to him who becomes a neighbor in his stead.   Since it is a right, privilege or easement existing in favor of an owner or neighbor, it must pass when the ownership or neighborship passes, or it must abate entirely.   It cannot exist as a separate property.   The phrase, 'person who built it,' contained in the statute, can only mean *the owner*, whether he became such by building the wall in person, or hiring it done by another, or by purchasing it with the lot after it is built."

The motion for a rehearing is denied.