No. 24,351.

S. H. Hale and S. H. Hale as Trustee for The Hale Petroleum
Company, *Appellants,* v. The Gypsy Oil Company, *Appellee.*

SYLLABUS BY THE COURT.

Oil and Gas Lease—*Assignment and Subsequent Assignment of Part Interest
in the Lease—Contract of Lease and Subsequent Assignments Construed—
Liability of Assignee to Pay Share of Rent.* The owner of 160 acres of land
executed an oil and gas lease thereon containing a provision that in case oil
or gas was found in paying quantities the lessor was to receive an additional
payment of $5,000 out of the first production. The lessee assigned his inter-
est in a specified 80 acres of the lease by an instrument providing that which-
ever party to such instrument first struck oil on his part of the lease, the
other should pay half of the $5,000 thereby made payable to the lessor, and
that the contract was binding upon legal representatives, successors and
assigns of the parties. The assignee in turn assigned an undivided half of
his interest, by a writing in which the new assignee agreed to pay half of all
rentals and royalties accruing on account of the lease and of all bonuses pro-
vided therein payable out of the proceeds of oil, and was authorized to pay
all future rentals, the assignor agreeing to make reimbursement for its share
thereof. Thereafter the original lessee struck oil on the acreage he had re-
tained and paid the lessor $5,000. It is held that the second assignee was
liable for the payment of $1,250 to the lessee.

Appeal from Butler district court; Allison T. Ayres, judge. Opinion filed
March 10, 1923. Reversed.

L. P. *Brooks,* of Wichita, and E. W. *Grant,* of El Dorado, for the appellants.

James B. *Diggs,* Rush *Greenslade,* and William C. *Liedtke,* all of Tulsa,
Okla., for the appellee.

The opinion of the court was delivered by

Mason, J.:  On January 15, 1916, the owner of a quarter section
of land executed to S. H. Hale an oil and gas lease thereon providing
that in case oil or gas was found in paying quantities, the lessor was
to have (in addition to a royalty of one-seventh) all money from
the sale thereof until he had received $5,000, and that all conditions
between the parties should extend to their heirs, executors and as-
signs. On January 22, 1917, Hale executed to the Whitewater Oil
and Gas Company an assignment of his rights with respect to two
forties of such tract, wherein it was agreed by both parties that
whichever first struck oil on the eighty acres of his part of the lease
should pay the lessor $2,500 out of the first oil produced, the other

to pay the remaining $2,500. The assignment also contained a paragraph reading: "This agreement is binding upon legal representatives, successors and assigns of the parties hereto." On May 24, 1917, the Whitewater company executed to the Gypsy Oil Company an assignment of an undivided half interest in the part of the lease which it had acquired, each party agreeing to pay one-half of all rentals and royalties which might accrue upon account of such lease and of all bonuses provided therein payable out of the oil or proceeds of oil, and the Whitewater company authorized the Gypsy company to pay all future rentals as they accrued upon such lease, agreeing to make reimbursement for its share thereof. In November, 1917, Hale struck oil on the part of the lease retained by him, from the proceeds of which he paid the lessor the $5,000 to which he was entitled under the lease. On July 25, 1918, Hale sued the Gypsy Oil Company (these two being hereinafter spoken of respectively as the plaintiff and defendant, although other parties were also named in the title) for reimbursement on account of his having been required to pay the whole $5,000. Judgment was rendered for the defendant, and the plaintiff appeals.

The principal question involved is whether or not the defendant, by reason of accepting the assignment from the Whitewater company incurred a personal liability to the plaintiff to share with him in the payment of the $5,000 to the lessor, in case oil was first struck on the plaintiff's part of the lease. On behalf of the defendant it is argued that the agreement incorporated in the assignment from the plaintiff to the Whitewater company, by which if either was required to pay the $5,000 the other would share in the payment, was purely personal; that it was not a covenant running with the land; that it did not impose a personal obligation upon a transferee of the rights of either and could not have been so drawn as to have that effect. In support of this contention cases are cited concerning the kind of covenants that run with the land, or may be made to do so, some of them involving such tests as whether they are to be performed on the land or are for the benefit of the land. We do not think the facts on which they turn are sufficiently analogous to those here presented to make them applicable. Nor do we deem it necessary to discuss the somewhat technical rules concerning covenants running with the land. The present problem may be solved as one concerning contractual obligations, turning upon the intention of the parties as indicated by the language employed, considered in the light of the

attendant circumstances. The plaintiff is entitled to recover if the contract between him and the Whitewater company showed a purpose on their part that any assignee of the rights of either thereunder should become personally bound to share in the payment of the $5,000, in case the other became liable for it, at least if the defendant in the assignment accepted by him expressly assumed obligations in language fairly to be interpreted as including that sought to be here enforced. The question to be determined is whether such conditions exist.

While the lease of the whole quarter section remained under the same ownership it made no difference to any one, so far as the $5,000 payment was concerned, in what part of it oil should be first found. If oil was found in paying quantities anywhere on the lease the lessor was to receive an additional sum of $5,000, and doubtless by way of security it was required to be paid out of the first oil produced. When half of the acreage was about to be transferred the adjustment of the payment between the assignor and assignee became quite important. In the absence of any special agreement the burden of the $5,000 payment would fall wholly upon the owner of the well first producing oil, wherever situated. The effect and presumed purpose of the arrangement that was entered into between the plaintiff and the Whitewater company was to divide the burden equally between the two owners of the respective eighty-acre portions. If in the contract which they entered into, immediately following the provision that upon oil being produced on the acreage of either the other was to pay one-half the $5,000, there had been inserted some such clause as "and this obligation shall be binding not only upon the parties hereto but upon their successors in interest as well," we think this would have clearly shown an intention that the arrangement for the apportionment of the $5,000 should continue in effect, whoever might be the owners of the separate portions of the lease when oil should be first produced. The paragraph that was actually inserted in the contract—"This agreement is binding upon the legal representatives, successors and assigns of the parties hereto"—is hardly less explicit. The situation is not that presented where to the names of the grantee in a conveyance or transfer there is formally added such a stock phrase as "his heirs, administrators and assigns." The matter of successorship is made the subject of a separate paragraph, to which this language, used in a party wall case, may be applied:

"If the . . . paragraph . . . means only that the personal obligations assumed by the parties shall be binding upon their respective estates, then . . . it expresses absolutely nothing that the law does not imply, and is utterly without force. It should not be so treated if there is a reasonable and natural construction available that will give it some effect." (*Southworth v. Perring*, 71 Kan. 755, 765, 81 Pac. 481.)

The provision of the contract between the plaintiff and the White-water company by which each was to pay one-half of the $5,000 is one readily adapted to a natural method of apportioning the payment between the two parts of the original lease. It seems unlikely that the parties intended that any portion of the $5,000 made payable upon the production of oil should be paid to or by one whose interest in the lease had ceased before that event, and a construction attributing such an intention to them should not be adopted if any other is reasonably open. We think the fair meaning of the contract is that the payment of the $5,000 should be shared equally by the owners of the respective eighty-acre portions of the lease at the time the oil should be produced. The defendant was chargeable with knowledge of its contents, and by accepting from the Whitewater company an assignment of a half interest in the rights it created may well be regarded as having succeeded to the burdens as well as the benefits thereof, which were quite reciprocal; the former included the liability to be called on to contribute to the $5,000 in one contingency, which was counterbalanced by the right to receive a corresponding contribution in another—according to which eighty acres first produced oil. The express provisions of the assignment to the defendant fit in with this aspect of the matter. They required the defendant to pay half the rentals and royalties which might accrue on account of the lease, and of bonuses payable out of the proceeds of oil, and authorized it to pay all future rentals as they accrued, to be reimbursed by the Whitewater company for its proportionate share thereof. The $2,500 required to be paid to the plaintiff if oil was first struck on his part of the lease was the result of an apportionment of the $5,000 payment provided in the original lease, whether it be called rental, royalty or bonus. It was a part of the price to be paid for the oil and gas privileges granted by the owner of the land, and we think it fairly within the obligations explicitly undertaken by the defendant as well as within those assumed by implication.

The instrument by which the Whitewater company assigned to the defendant a half interest in its holdings included provisions for

their coöperation in the development of the lease, which the plaintiff regards as creating a partnership or establishing such a relation between the two companies as to render them jointly and severally liable for the payment of $2,500. We do not accept this view, but hold the defendant responsible to the extent of its half interest—that is, for $1,250. It appears that on June 1, 1917, the Whitewater company assigned its remaining half interest to the American Oil & Refining Company, which, on January 10, 1920, assigned it to the defendant. This last assignment was made long after the discovery of oil (as well as long after this action was begun). The liability of the Whitewater company for the payment of the other $1,250 having become fixed by the oil production we think it did not pass to the subsequent assignees, upon grounds analogous to those upon which the assignee of a lessee is held not to become personally liable for past due rent.

The assignment from the Whitewater company to the defendant was conditional upon the assignment to it being confirmed by the lessor to avoid a question as to the performance of conditions, but as the confirmation was had this circumstance does not affect the decision.

The judgment is reversed, and the cause is remanded with directions to render judgment against the Gypsy company for $1,250 and interest.