No. 25,491.

JOHN COMFORT et al., *Appellees*, v. CHARLES LYNCH and DANIEL SCHERER, Partners, etc., *Appellants*.

SYLLABUS BY THE COURT.

PARTY WALLS—*Written Contract—Consideration Presumed—Rights of Successor in Title.* In an action brought to obtain an adjudication that a right to the maintenance and use of a party wall under a written contract had ceased, it is held (1) that such right had not been ended by the terms of the agreement; (2) that the presumption of the existence of a consideration was not overcome; and (3) that the rights of the grantee had passed to his successor in title.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. Mc-CAMISH, judge. Opinion filed March 7, 1925. Reversed.

*J. H. Brady,* and *T. F. Railsback,* both of Kansas City, for the appellants.
*David F. Carson,* and *C. A. Miller,* both of Kansas City, for the appellees.

Comfort v. Lynch.

The opinion of the court was delivered by

MASON J.: In 1911, John Comfort, the owner of lot 81 on Ewing street in Old Kansas City, Kan., and Edward Daniels, the owner of lots 79 and 77, lying just south of it, entered into a written agreement with reference to a wall occupying the south 18 inches of lot 81, and forming a part of a building on that lot and also of a building on lots 79 and 77. Later Charles Lynch and Daniel Scherer bought lots 79 and 77 from Daniels. On May 2, 1921, a fire destroyed the building on lot 81, the south wall, however, being left. Comfort (his wife being also named as a plaintiff) brought this action against Lynch and Scherer for possession of the 18-inch strip on which the wall stands, claiming that any rights the defendants had with reference thereto had ceased with the destruction of the plaintiff's building. Judgment was rendered for the plaintiff and the defendants appeal.

The contract referred to reads:

"Know all men by these presents: That whereas, John Comfort, one of the undersigned parties to this contract, is the owner in fee simple of the following-described real estate in Wyandotte county, Kansas, to wit: Lot eighty-one (81) on Ewing street, in Old Kansas City, Kansas; and Edward Daniels is the owner of lots 77 and 79 on Ewing street in Old Kansas City, Kansas, in said county and state; and whereas, there is a brick wall 18 inches in width on the south side of said lot 81, which wall forms a part of a building on said lot 79; Now, therefore, this is to witness that it is mutually understood and agreed by and between said John Comfort and said Edward Daniels that said wall is to be considered a party wall during its existence; provided, however, that whenever said building or 18-inch wall is torn down, destroyed or otherwise removed from said lot 81, the said Edward Daniels, his heirs or assigns, shall cease to have the right to the use of said 18 inches of ground on the south side of said lot 81, free and clear of any and all right, title or interest of said Edward Daniels, his heirs or assigns."

1. The clause "whenever said building . . . is torn down," etc., is interpreted by the plaintiff as referring to the building on lot 81, and by the defendants as referring to that on lots 77 and 79. The defendants argue that as the only building previously mentioned in the writing was that on lots 77 and 79, the phrase "said building" obviously refers to it. The plaintiff, on the other hand, urges that the language "whenever said building or 18-inch wall is torn down, destroyed or otherwise removed from said lot 81" is not applicable to a building on other lots. The wall in question, however, was a part of the south building as well as of the north one, and if the

intention was to give Daniels a right to use the 18 inches of ground so long as his building and the north wall thereof should stand, this court regards it as natural and appropriate to describe the time the right should cease, as whenever that building or the north wall of it should be destroyed or removed from lot 81. The party wall, although on lot 81, was a part of the south building, and to take down that building in its entirety, including the north wall, would be to remove it from lot 81 as well as from lots 77 and 79. We conclude that the phrase "said building" refers to that of Daniels. This reading accords with what appears to be the general purpose of the agreement. So interpreted, the contract is sufficiently specific so that we need not review cases passing upon the effects of party-wall contracts in general.

2. The plaintiff also contends that the party-wall contract is not enforceable because of a want of mutuality, no obligation having been assumed on the part of Daniels. The contract is a grant of rights by Comfort to Daniels. Being in writing, there is a rebuttable presumption that there was a consideration for the grant. (R. S. 16-107.) We find no evidence tending to contradict this presumption, and the existence of a consideration must therefore be treated as established, so that the claim of a want of mutuality fails.

3. A further contention of the plaintiff is that the rights acquired by Daniels were personal to him and were not intended to run with the land. The contract was acknowledged and recorded. It belongs to a class of agreements "so related to the real property affected, and so adapted to impose their obligations and bestow their benefits upon the successors in title of the landowners by whom they are made, that the purpose that they shall have that effect is readily to be inferred from the employment of language having any substantial tendency in that direction." (*Southworth v. Perring*, 71 Kan. 755, 761, 81 Pac. 481.) Its provision that the right of Daniels, "his heirs or assigns," should cease upon the destruction of the wall or the building on lots 77 and 79 implies that his successors in title were understood to acquire a right under it, and is in our view sufficient to show an intention that the right granted should run with the land.

The judgment is reversed with directions to render judgment for the defendants.