No. 41,651

JOHNSON BROS. FURNITURE CO., INC., *Appellant,* v. ERNEST E. ROTH-FUSS and SADIE ROTHFUSS, *Appellees.*

(349 P. 2d 903)

Opinion filed March 5, 1960.

*Howard W. Harper* and *Richard F. Waters,* both of Junction City, argued the cause, and *Lee Hornbaker* and *William D. Clement,* both of Junction City, were with them on the briefs for the appellant.

*Arthur S. Humphrey,* of Junction City, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This was an action brought by the plaintiff, Johnson Bros. Furniture Co. Inc., to rescind a contract for the purchase of real estate, a town lot located in the business district of the City of Junction City, and to recover certain payments made on that contract in accord with its requirements.

The record is confusing and the parties have failed to make a statement of facts sufficient to give readers of this opinion a proper understanding of the salient appellate issues involved. Therefore, based on its own view of what is required to dispose of those issues, and limited strictly thereto, the court makes the following summarized chronological factual statement.

The defendants, Ernest E. Rothfuss and Sadie Rothfuss, his wife, were the owners of Lot 15, Block 22, in Junction City, located in the business district of that city. Harry E. Montgomery was the owner of Lot 14, which was directly to the west and adjacent to Lot 15. According to the official plat of Junction City, as all parties concede, both lots run North and South and are each One Hundred Forty feet in length and Forty-six feet in width.

On March 10, 1952, Montgomery and Rothfuss, his wife joining, entered into a party wall agreement which, since it is actually the indirect cause of this lawsuit, should be quoted at length. Omitting formal averments it reads:

"Whereas, there is located on said Lot Fifteen (15) a brick apartment house, the West wall of which is located about 1.7 feet East of the West line of said Lot Fifteen (15), and

"Whereas, there is located on said Lot Fourteen (14) a brick store building which encroaches upon said Lot Fifteen (15) about 2 feet, the East wall thereof running from Seventh Street North a distance of 24.9 feet and there attaching onto the West wall of said brick apartment house, said West wall being also the East wall of said store building North to a point 80.5 feet south of the North line of said Lot Fifteen (15), and

"Whereas, the parties hereto desire to settle all questions as to the ownership of said walls and all differences between them relating to said encroachment.

"Now, Therefore, in consideration of One Dollar ($1.00) and other valuable considerations, receipt of which is hereby acknowledged, *parties of the first part [Rothfuss and wife] do hereby grant, bargain, sell and convey unto party of the second part [Montgomery] a strip of land off the West side* of said Lot Fifteen (15), *including one-half of the walls above mentioned,* said strip of land being described as follows, to-wit:

"Beginning at the Southwest corner of Lot Fifteen (15), Block Twenty-two (22), Junction City, Kansas, thence East along the South line of said Lot

Fifteen (15) about 23.98 inches to the. *center of a brick wall,* thence in a Northerly direction *along the center line of said wall* about 24.9 feet to the point where said brick wall attaches to the West wall of an apartment house now located on said Lot Fifteen (15), thence continuing in a Northerly direction *along the center line* of the West wall of said apartment house to a point 59.75 feet South of the North line of said Lot Fifteen (15) and to the North end of the now existing West wall of said apartment house, *thence along the center line* of said West wall prolonged Northerly about 59.75 feet to the North line of said Lot Fifteen (15), thence West along said North line to the North-west corner of Lot Fifteen (15), thence South along the West line of said Lot Fifteen (15) to place of beginning.

"It is further agreed that in case either party, their heirs or assigns, desire to extend their respective buildings to the North of the present wall herein described, the same shall be on a line with the present wall, and if either shall desire to build more than two-stories high, the wall shall be on top of and on the same line as the present wall or any extension thereof; and when either party shall extend the said wall, the other party shall have the right to use as a party wall and join the same by paying the other party one-half of the cost of such wall as he shall use. It is distinctly understood and agreed that the wall herein described and any extension thereof shall at all times be and the same is a party wall.

"And the said parties hereto do hereby mutually agree for and with themselves, their heirs and assigns, that if it shall hereafter become necessary or desirable to repair or rebuild the whole or any portion of said party wall, the expense of such repairing or rebuilding shall be borne equally by the parties hereto, their heirs or assigns, as to so much in such portion of said party wall as the parties hereto, their heirs and assigns, shall or may at the time of rebuilding or repairing be using in common for the purpose aforesaid, and that whenever said party wall, or such portion thereof, shall be rebuilt it shall be erected upon the same spot and upon the same land and be of the same size and same or similar material and of like quality with the present wall.

"*It is further mutually agreed that the benefits and obligations of the covenants herein shall annex to and run with the land herein described so long as said wall or any extension thereof continues to exist, and shall bind the respective parties hereto, their heirs, legal representatives and assigns.*" (Emphasis supplied.)

Several years after the execution of the party wall agreement, and on March 14, 1957, defendants and plaintiff entered into a written contract by which defendants agreed to sell and plaintiff agreed to buy Lot 15. Later, and on May 25, 1957, they executed a similar contract for the sale of such property, which is the direct source from which this action springs and for that reason should be quoted at some length. Omitting formal averments, and other matters of no consequence to the issues presented by this appeal, including

terms and conditions of payments and possession of the property, such contract reads:

"First parties [Ernest and Sadie Rothfuss] do hereby agree to sell and convey unto second party [Johnson Bros. Furniture Co. Inc.,], the following described real estate, to-wit:

"Lot Fifteen (15), Block Twenty-two (22), Junction City, Kansas, the total purchase price therefor, to be the sum of $25,000.00 to be paid as follows:

. . . . . . . . . . . . .

"First parties agree to furnish second party an abstract of title showing merchantable title to said real estate to be vested in first parties free and clear of encumbrances, and a warranty deed conveying said real estate to second party.

"The said second party shall have the privilege of examining the abstract and thereafter said abstract, deed and copy of this contract shall be placed in escrow with the Citizens Savings and Loan Association of Junction City, Kansas."

On June 14, 1957, defendants, through their real estate broker, presented plaintiff with an amendment to the written contract of May 25th and requested that plaintiff sign that instrument, the terms of which provided plaintiff would accept title to the Lot described in the original contract, *subject to Party Wall Agreement*, recorded in Deed Record 38, pages 605-606, Geary County, Kansas. Plaintiff declined to sign the amendment and, on or about such date, asked for defendants' abstract so that it could be examined by its attorneys. The abstract was delivered to such attorneys on June 18, 1957. Thereafter, and on June 22, they furnished plaintiff with their "Title Opinion" in which they referred to the party wall agreement, directed attention to the fact that all the encumbrances in that agreement would apply if plaintiff accepted the deed to the property and advised that the defendants could not give merchantable title to the real estate described in the contract and that title thereto should not be accepted for that reason.

On July 2, 1957, plaintiff gave defendants formal written notice of its rescission of the contract by letter and requested return of the payments made under its terms. Attached to this letter was a cashier's check in the sum of all rentals collected by plaintiff on the apartment house after June 1, 1957, the date on which it was to take possession of that property under the terms of that instrument. By letter, dated July 9, 1957, defendants returned the cashier's check and, since it is not set forth in the record, we assume that therein they declined to rescind the contract.

Thereafter, and on or about July 12, 1957, defendants procured from Montgomery, the owner of Lot 14, a supplemental party wall agreement. Although the record does not expressly so state, we may also assume they requested plaintiff to accept this instrument in satisfaction of its claim respecting the status of the title and that plaintiff refused to do so. In any event that instrument, relied on by defendants as having that force and effect, is a part of the record. Omitting formal averments it reads:

"Now, Therefore, The said Fern Montgomery, a widow, does hereby grant to Ernest E. Rothfuss and Sadie Rothfuss, husband and wife, their heirs and assigns the right to raze the brick apartment house or any other building situated on said Lot Fifteen (15) so long as they do not damage or impair the usefulness of the party wall set up by said original agreement, and Ernest E. Rothfuss and Sadie Rothfuss for themselves, their heirs and assigns, undertake that said party wall shall continue as heretofore, and that they will not in any way damage it nor impair its usefulness as a party wall, and the said Ernest E. Rothfuss and Sadie Rothfuss, husband and wife, do hereby grant to Fern Montgomery, her heirs and assigns, the right to alter or raze any building situated on said Lot Fourteen (14) so long as they do not damage or impair the usefulness of the party wall set up by said original agreement, and Fern Montgomery for herself, her heirs and assigns, undertakes that said party wall shall continue as heretofore, and that they will not in any way damage it nor impair its usefulness as a party wall."

Plaintiff commenced the instant action on July 18, 1957. The pleadings are not in question and need not be labored. It suffices to say, without detailing their lengthy allegations, that the plaintiff's petition, the defendants' answer, and the plaintiff's reply join issues on the respective rights of the parties to rescission or specific performance of the contract for the purchase of the real estate in question (Lot 15).

With issues joined as indicated the case was tried by the court which, at the close of all evidence adduced by the parties, indicated that the controlling question involved was whether or not the party wall agreement was an encumbrance sufficient in importance upon which to rescind the contract. It then found that plaintiff was not entitled to a rescission of such contract, but that the defendants were unable to convey all of Lot 15 for the reason that they had theretofore conveyed away for the purposes of a party wall the west 23.98 inches of that Lot; that such deficiency was inconsiderable in proportion to the property agreed to be conveyed and the lack of it would not appreciably affect the remainder of the Lot by plaintiff; that such deficiency was subject to ratable abatement

of the purchase price; and that the agreed purchase price should be abated by $1,086.05.

Following the announcement of the court's decision plaintiff filed a motion for a new trial which was ultimately heard and overruled. Subsequently judgment was rendered in accord with the court's findings, as previously announced. Thereupon the plaintiff perfected the instant appeal.

In the first specification of error urged by appellant in its brief it recognizes what, as we have previously indicated the trial court pointed out, is the controlling issue involved in the cause by contending that that tribunal erred in holding that the party wall agreement was not an encumbrance sufficient in importance to require rescission of the purchase contract.

With a proper understanding of the force and effect to be given the provisions of the two instruments just mentioned, to which we now direct our attention, we do not believe a decision of the foregoing issue is too difficult.

For purposes now under consideration it may be stated at the outset that Lot 15, Block 22, Junction City, is the only property involved and that according to the official plat of that city, which we pause here to note fixes its area (*Rutherford v. Tracy et al.,* 48 Mo. 325, 328; *Schreiber v. Straus,* 147 Ill. App. 581, 586), is one hundred forty feet in length and forty-six feet in width.

Resort to the party wall agreement of March 10, 1952, which we have heretofore quoted to avoid any possible misunderstanding, discloses that it is far more reaching than its name and/or title implies. By its terms Rothfuss and wife not only conveyed outright a tract of land approximately two feet by one hundred forty feet off the west side of Lot 15 but they also encumbered an additional portion of such lot (approximating 2 feet in width and 140 feet in length) lying directly east of such tract, all for purposes of a party wall, subject to the terms, conditions and requirements of pertinent portions of the party wall agreement. That when considered together, the tracts thus involved were approximately four feet in width and one hundred forty feet in length, is conclusively demonstrated by resort to the descriptions thereof as set forth in the agreement where, in clear and unequivocal terms, it is stated, not once but four times (see emphasized portions of description), that the two feet outrightly conveyed extended to the center line of a wall which then existed on Lot 15. Moreover, it

is to be noted, that in the same agreement (see emphasized portions of last quoted paragraph thereof), the parties mutually agreed that the benefits and obligations of all covenants therein set forth should be annexed to and run with the land therein described. Since such agreement was acknowledged and recorded this, under our decisions (see, e. g., *Beloit Bldg. Co. v. Quinn,* 145 Kan. 507, 66 P. 2d 549; *Comfort v. Lynch,* 118 Kan. 40, 42, 233 Pac. 1042; *Southworth v. Perring,* 71 Kan. 755, 756, 761, 81 Pac. 481; Rehearing denied in 71 Kan. 761, 81 Pac. 785), means subsequent purchasers of Lot 15 would take title thereto subject to, and be bound by, the terms and conditions of that instrument.

What has just been stated leads to the inescapable conclusion that, on all dates after the execution of the party wall agreement, Montgomery and/or his heirs or assigns, as the case might be, actually owned the west two feet by one hundred forty feet of Lot 15 subject to whatever rights Rothfuss and wife had under the party wall agreement and, in addition, had an interest in an adjacent tract in the same lot, directly to the east, approximating two feet by one hundred forty feet, which could not be sold or conveyed by Rothfuss free and clear of the rights possessed therein by Montgomery under the terms and provisions of such agreement.

Upon resort to the contract of May 25, 1957, it cannot be denied that on such date, notwithstanding they had theretofore conveyed approximately two feet by one hundred forty feet of Lot 15 to Montgomery and encumbered approximately two feet by one hundred forty feet more of the same lot in the manner and form heretofore indicated, appellees entered into a solemn written contract with appellant whereby they agreed to sell and convey appellant all of Lot 15 for the sum of $25,000.00, to be paid in installment payments of no consequence to the issue now involved; agreed to furnish appellant an abstract of title showing *merchantable title to such real estate to be vested in it free and clear of encumbrances;* and give it a warranty deed conveying title to such real estate. Evidence that they could not comply with their contract is fully demonstrated by the fact that on June 14, 1957, appellees, through their real estate broker, presented appellant with an amendment to the written contract of May 25, 1957, and requested that it sign that instrument, containing provisions that appellant would accept title to the lot described in the original contract *subject to the party wall agreement of record.*

There can be no doubt regarding what constitutes a marketable or merchantable title in this jurisdiction. The court has been called on to pass upon that question on many occasions. The rule is well-stated in *Peatling v. Baird*, 168 Kan. 528, 213 P. 2d 1015, and cases there cited, where it is held:

"A marketable title to real estate is one which is free from reasonable doubt, and a title is doubtful and unmarketable if it exposes the party holding it to the hazard of litigation.

"To render the title to real estate unmarketable, the defect of which the purchaser complains must be of a substantial character and one from which he may suffer injury. Mere immaterial defects which do not diminish in quantity, quality or value the property contracted for, constitute no ground upon which the purchaser may reject the title. Facts must be known at the time which fairly raise a reasonable doubt as to the title; a mere possibility or conjecture that such a state of facts may be developed at some future time is not sufficient." (Syl. ¶¶ 1, 2.)

In the instant case it clearly appears appellees find themselves in the unfortunate position of having contracted to sell a tract of land, one portion of which they do not own and therefore cannot convey and another portion of which is subject to burdens, imposed by the party wall agreement, making it impossible to convey a merchantable title to the entire tract free and clear of encumbrances. In that situation, under the rule just stated and in the face of facts such as are here involved, we have little difficulty in concluding that appellant was entitled to rescission of the contract and that the trial court erred in refusing to grant it that relief.

In an attempt to forestall the conclusion just announced appellees direct attention to the fact the record discloses some evidence to the effect that, about the time appellant gave notice of its intention to rescind the contract, Kenneth Johnson, President of the corporation, orally advised Mrs. Rothfuss, one of the appellees, that if she would get an agreement to let them tear down the apartment building he would go ahead with the deal; and point out that thereafter appellees obtained the supplemental wall agreement, pertinent portions of which have been heretofore quoted in the opinion. Based on the foregoing appellees contend the record establishes that appellant waived the defects in the title and is therefore estopped to rely thereon.

With evidence as just indicated, and mindful that to tear down an apartment house would require the dismantling of its four walls, we believe the short and simple answer to all contentions advanced

by appellees on this point is to be found in the supplemental party wall agreement. Resort to that instrument, as heretofore quoted, discloses that its terms, although they purport to give the right to raze the brick apartment house, not only reaffirm the terms and provisions of the original party wall agreement but expressly preclude the tearing down of the west wall of the apartment house which, it will be remembered, was a part and parcel of the party wall. Indeed, when carefully analyzed, it appears the supplemental wall agreement did not give the owners of the apartment building any more right to tear it down than they had prior to its execution. Under the circumstances assuming, but not deciding, the subsequent oral contract for the purchase of Lot 15 on new and different terms would otherwise be enforceable, we do not believe it can be successfully argued appellees complied with the requirements of such contract. Therefore any claim that appellant waived the terms of the original purchase agreement and is estopped from rescinding it lacks merit and cannot be upheld.

The confronting facts and circumstances, and what has been heretofore stated and held, compel a conclusion the trial court erred in denying rescission of the contract and in requiring performance of the same on the basis of a ratable abatement for the portion of Lot 15 appellees did not own on the date of the execution of that instrument. Therefore the judgment is reversed with directions to grant appellant a new trial and proceed in accord with the views herein expressed.