**H. Reed DUSENBERY and LaVerna Dusenbery, Plaintiffs,**

**v.**

**Laurence R. JONES, Jr., and Richard F. Sandifer, Defendants.**

**Civ. A. No. T–4783.**

United States District Court, D. Kansas.

July 7, 1972.

Charles S. Arthur, Arthur, Green & Arthur, Manhattan, Kan., for plaintiffs.

Jerome T. Wolf, Spencer, Fane, Britt & Browne, Kansas City, Mo., Edwin Dudley Smith, Topeka, Kan., for defendants.

## OPINION OF THE COURT WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

THEIS, District Judge.

### FINDINGS OF FACT

1. Plaintiffs H. Reed Dusenbery and LaVerna Dusenbery are residents and citizens of the State of Nebraska. Defendant Laurence R. Jones, Jr., is a resident and citizen of the State of Kansas.

Defendant Richard F. Sandifer is a resident and citizen of the State of Missouri. The amount in controversy for which plaintiff sues exceeds the sum of $10,-000.00, exclusive of interest and costs.

2. On October 9, 1964, the parties entered into an agreement (marked Exhibit "A", appended hereto and made a part hereof), entitled "Proposal to Lease with Rights of Real Estate Purchase Agreement." This agreement was drawn by defendants and provided for the lease and eventual sale of the property described therein to defendants. This agreement was superseded on November 7, 1964, by a "Purchase Agreement With Lease Provisions" (marked Exhibit "B", appended hereto, and made a part hereof), which incorporated provisions of the October agreement by reference. The lease was for a five-year term but the purchase was to be consummated at some time during the final four years of the term.

3. The described property which is the subject of these agreements consists of 11.57 acres of land located approximately five miles north of Manhattan, Kansas, and is subject to the Riley County Planning and Zoning Laws.

4. At the time of the agreements the property was zoned and continues to be zoned C–R (Restricted Business Zone).

5. With respect to zoning, the agreements provided that defendants would be permitted to use the premises for any legitimate business allowable under zoning and local laws, and particularly to permit the operation of a motor hotel, marina, bait and tackle shop, sale of boats and boat storage, grocery store, restaurant and other miscellaneous recreational services that would be customary in this sort of location. It was further provided that if the land were not properly zoned for the proposed businesses, the plaintiffs agreed to have the property properly zoned to allow operation of the aforementioned businesses.

6. Defendants took possession of the land on December 1, 1964, and commenced negotiations with various corporations concerning development of the property. A Ramada Inn franchise was temporarily secured, but later lost because defendants were unable to procure the necessary financing. Owing to defendants' inability to secure financing, none of the projected businesses were developed. Moreover, the evidence was clear and convincing in this area.

7. Plaintiffs, at or about the time the agreements were executed, were assured by J. Robert Wilson, at that time a member of the Riley County Zoning Board, that the C–R classification embraced all defendants' projected uses. Subsequently, the defendants obtained the opinion of Clifford Palmquist, the Riley County Engineer, charged with initial enforcement of the zoning regulations through the issuance of building permits, that several of the proposed uses would require a lower zoning classification.

8. Defendants, allegedly relying on Mr. Palmquist's opinion, declined to consummate the transaction, alleging that plaintiffs had breached their obligation to insure the property was properly zoned for the specified uses and that their obligation was a condition precedent to defendants' obligation to purchase the property.

9. The C–R zoning classification does not clearly prohibit any of the uses specified by the contract. Thus, in order to resolve the issue, it would have been necessary to apply for a building permit, and if one were refused, to initiate proceedings before the Riley County Zoning Board pursuant to its regulations.

10. Under the applicable regulations it would have been necessary for plaintiffs to present a plan showing the location and dimensions of proposed buildings to the county engineer before a permit would issue. Then, if it became necessary to seek rezoning, plaintiffs would have had to present to the Board a proposed plat of the area, together with sketches or drawings depicting the type and general appearance of buildings together with their proposed use. In addition, plaintiffs would be required to demonstrate that defendants, or other potential developers, had sufficient funds

to accomplish the proposed development, since both Palmquist and Wilson agreed one of the principal functions of the zoning board was to see that substantial business and improvements were to be erected under proposed zoning.

11. Defendants were the only persons able to furnish plaintiffs with the required plats and drawings, as well as financial information. Due to their inability to obtain financing, defendants never progressed to the point where such plats and drawings would be available. Therefore, plaintiffs could not have initiated zoning reclassification proceedings.

12. At the time the agreements were made, the property had only limited access to the adjoining highway. As a result of condemnation proceedings, access to the highway was limited to 38.4 feet as shown in the abstract of title. Moreover, a road leading from the highway onto the property was in use prior to the time the agreements were executed, which demonstrated the restriction on access.

13. The intention of the parties as reflected from the wording of the instruments and supplemented by the testimony of the parties was that the zoning of the property was not to be a condition precedent but was a part of the ultimate consideration and legal duty to be performed by plaintiffs in the event the requisite zoning was needed or required by defendants.

14. To date, no part of the purchase price has been paid by defendants to plaintiffs.

15. The findings of fact made herein are based on the Court's observation and analysis of the demeanor of the witnesses and the content of testimony as to credibility and weight of the evidence.

## CONCLUSIONS OF LAW

1. The Court has original jurisdiction in this matter on the basis that the matter in controversy exceeds the sum of $10,000.00, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C.A. § 1332.

2. Specific performance is an equitable remedy and rests in the sound discretion of the court. However, the remedy is not available to a plaintiff who fails to perform a condition precedent to the defendant's performance. Wallerius v. Hare, 194 Kan. 408, 399 P.2d 543 (1965).

3. The provisions pointed out by defendants as creating a condition precedent to their performance when construed in context with the remaining provisions of the contract and in conformity with the Kansas law governing construction of contracts, do not obligate plaintiffs to effect a change in zoning as a condition precedent to defendants' performance. Rather, plaintiffs' promise to obtain proper zoning is but a part of the consideration agreed upon by the parties.

4. The Court will award specific performance only where to do so would be reasonable, proper and equitable under all the circumstances. Here, due to the collapse of defendants' proposed development, the requisite materials necessary to initiate a rezoning never became available. In fact, the legal propriety of the zoning was never really broached; rather, both parties placed reliance on divergent opinions rendered by persons serving in official capacities on the Riley County Zoning Board. Neither opinion was clearly erroneous and plaintiffs' reliance on Mr. Wilson's opinion was not misplaced. Hence, plaintiffs performed under the contract as well as they were able, given the existing circumstances.

5. Inasmuch as the limitation on access was a matter of public record and since the access to the highway was discernible upon inspection of the property, defendants knew, or should have known, of its existence and may not now object to it as a defect rendering plaintiffs' title to the property unmarketable. Even if defendants had not had knowledge of it, the restriction on access is not such a defect as would render plain-

tiff's title unmarketable and preclude specific performance of the contract.

6. Plaintiffs are entitled to specific performance of the agreement to purchase the property described in the contract.

7. Plaintiffs are entitled to a judgment against the defendants in the sum of Fifty Thousand Sixty Three and 41/100 Dollars ($50,063.41), together with interest at the rate of six per cent per annum from December 1, 1969, and the costs of this action.

8. Defendants are entitled to receive a General Warranty Deed from the plaintiffs for said real estate. The defendants are further entitled to title insurance in the amount of $50,000.00, insured through the Kansas City Title Insurance Company.

## OPINION OF THE COURT

On October 9, 1964, the parties to this action entered into an agreement entitled "Proposal to Lease with Rights of Real Estate Purchase Agreement" (hereinafter referred to as the "October" agreement), which provided for the lease and eventual sale of 11.57 acres of land situated near Tuttle Creek Reservoir, north of Manhattan, Kansas. Under the terms of the agreement the defendants were to pay an annual rental of $3,000.00 to plaintiffs, in addition to all real estate taxes and insurance. The lease was for a five-year term. It was further provided that defendants would purchase the property at some time during the last four years of the term. The sale price was $50,000.00, to be paid in full upon delivery of a warranty deed. The agreement contained two additional provisions the interpretation of which furnishes the subject matter of this action.

The first provision stated that the lease was to contain a clause generally permitting the defendants to use the premises for the operation of a motor hotel, marina, bait and tackle shop, sale of boats and boat storage, grocery store and restaurant, so long as these uses were consistent with the local zoning laws. The second provision provided as follows:

"If land is not properly zoned, the LANDLORD-SELLER agrees to have the real estate properly zoned to permit the operation of any or all of the aforementioned businesses."

Subsequently, on November 7, 1964, the same parties entered into a "Purchase Agreement With Lease Provisions" (hereinafter referred to as the "November" agreement), which incorporated the prior agreement of October 9th by reference. This agreement contained substantially the same provisions as the prior agreement. With regard to use of the premises and zoning, the agreement provided that the buyer agreed to:

". . . use the premises during the term for no other purposes than any ligitiment [sic] business allowable under zoning and the local laws to permit the operation of a motor hotel, marina, bait and tackle shop, sale of boats and boat storage, grocery store, restaurant, and other miscellaneous services that would be customary in this sort of location."

Defendants took possession of the property on December 1, 1964.

At the time the defendants entered into possession, the property was zoned C–R. According to the testimony of plaintiffs and of J. Robert Wilson, who is the local abstracter and who in 1964 was a member of the Riley County Zoning Board, the C–R classification encompassed all the uses specified in the contract. In fact, Mrs. Dusenbery testified she had contacted Mr. Wilson prior to signing the contract and he had assured her the C–R classification was adequate for the projected uses. During the remainder of the lease term plaintiffs made no attempt to secure a lower zoning classification. Defendants during this period attempted to secure a Ramada Inn franchise and begin development of the other business, but due to their inability to secure adequate financing they lost the franchise and were unable to

develop the property as they had originally anticipated.

Several days prior to the expiration of the five-year term the defendants received a letter from Mr. Palmquist, the Riley County Engineer, in response to their inquiry concerning the C–R zoning classification. The letter expressed Mr. Palmquist's opinion that some of the uses proposed by defendants were not permissible under the C–R classification, but would require the land to be rezoned to a lower classification, namely C. As County Engineer, Mr. Palmquist was charged with initial enforcement of the zoning regulations *through the issuance of building permits*. Purporting to rely on Mr. Palmquist's advice, the defendants refused to consummate the sale for the reason that the land was improperly zoned. Subsequently, plaintiffs filed the instant action seeking specific performance of the contract.

■■ The base issue in the case is whether or not the use and zoning provisions in the two agreements which place responsibility for obtaining the proper zoning classification on the plaintiff can be construed together as constituting a condition precedent. Defendants' position is that these clauses create a condition precedent to their performance and they have counterclaimed for their damages and expenses alleging a material breach of the contract. If the two clauses, when construed together do create a condition precedent, and if the Court determines plaintiffs failed to perform, then specific performance is not available to them. Wallerius v. Hare, supra. However, when the pertinent provisions are read together they do not conclusively indicate that a condition precedent was intended by the parties; hence, it becomes the Court's task in this case to decipher the intention of the parties and interpret the contract.

■■ In construing any contract the Court's function is to ascertain the intent of the parties through the language employed and by consideration of all the circumstances confronting the parties at the time they made the contract. New

Hampshire Insurance Co. v. Fox Midwest Theatres, Inc., 203 Kan. 720, 457 P.2d 133 (1969). One of the most outstanding features of the October agreement is the language employed by the parties in providing that plaintiff "agrees to have the real estate properly zoned . . . ." The language of this provision, which in the Court's opinion is the basis for any agreement relative to zoning, is certainly not conditional on its face; rather, the word "agrees" connotes a promise as opposed to a condition. Black's Law Dictionary, p. 88 (4th Ed. 1951). Furthermore, since the October agreement was drawn by the defendants it must be interpreted in favor of the plaintiffs where the language bears more than one reasonable interpretation, as it does here. Smith v. Russ, 184 Kan. 773, 339 P.2d 286 (1959); Dearborn Motors Credit Corp. v. Neel, 184 Kan. 437, 337 P.2d 992 (1959); First Nat'l Bank v. Methodist Home for the Aged, 181 Kan. 100, 309 P.2d 389 (1957); Kinmouth v. Griffith, 180 Kan. 389, 304 P.2d 494 (1957). This rule is premised on the presumption that a party who draws an instrument has the best opportunity to avoid ambiguity by exactness of expression. Smith v. Russ, supra. In the instant case, if defendants considered proper zoning to be a condition precedent to purchase, they had the opportunity to make the provision distinctly conditional. Instead, they selected words which are more promissory in tone than they are conditional, and in the process gave rise to an ambiguity. Consequently, this provision must be construed against defendants and interpreted as a promise rather than as a condition.

■ Even though plaintiffs' obligation to obtain proper zoning created by the October agreement is not, standing alone, a condition precedent, there remains the possibility that this provision, construed in light of the provisions of both the October and November agreements, was intended by the parties to be a condition precedent to the sale. This possibility is not borne out by the con-

tract nor by the testimony. In this area of assessing credibility and weight to testimony, the Court formed a distinct impression that the defenses raised by defendants of lack of proper zoning as a condition precedent to final consummation of the real estate purchase transaction, and the insufficiency of access as a title defect, were afterthoughts of the defendants which occurred after their principal efforts for promotion of the use and financing of the property had failed. When the provisions detailing the uses contemplated by defendants are examined in context, it becomes apparent that the plaintiffs' agreement to obtain proper zoning and defendants' agreement concerning use of the premises are merely mutual promises forming part of the overall consideration of the contract.

The remaining question is whether specific performance of the contract for sale should be decreed. The rules governing specific performance were succinctly stated by the Kansas Supreme Court in Shepard v. Dick, 203 Kan. 164, 453 P.2d 134 (1969), as follows:

"Specific performance is not a matter of right but of equity and rests in the sound discretion of the court. Before relief will be granted the contract must appear to have been entered into with fairness and without any undue advantage or imposition, and the facts and circumstances must be such as appeal to the conscience of the court and compel its discretion."

Specific performance is especially suited to the facts and circumstances of this case as developed during the trial. Prior to entering the contract, plaintiffs checked with Mr. Wilson, who assured them that the C–R classification encompassed the projected uses. Under the then existing zoning regulations the plaintiffs could do no more to insure the property was properly zoned. The propriety of the zoning could only be tested by filing for a building permit and since defendants' plans never germinated, that situation was never presented. Despite Mr. Palmquist's opinion that C–R was too restrictive to permit all the uses contemplated by defendants, plaintiffs' reliance on Mr. Wilson's opinion was not misplaced. The uses permitted under the C–R classification in the Riley County Zoning Manual do not clearly preclude any of the uses specified in the contract. It suffices for this case that the intended uses were arguably within the C–R classification. Plaintiffs did as much as could be done without defendants' cooperation to assure the land was properly zoned for the anticipated development.

In order to secure a change in zoning classification, the party seeking the change must present to the Zoning Board a proposed plat of the area, sketches or drawings showing the type and general appearance of the buildings to be constructed, and the developer must present satisfactory assurance that he has adequate funds to complete the project. From the evidence introduced at trial, plaintiffs were never in a position to obtain either a plat or drawings. It was also shown that the defendants' plans never reached a stage where plats or drawings of the type required were available. While it may be true that plaintiffs never requested to be furnished these materials, it is also true that defendants never volunteered them, and, in fact, never had them available. Therefore, plaintiffs were never in a position to initiate a change in the zoning classification.

In view of these facts, the Court must conclude the plaintiffs performed under the contract to the best of their ability. There is no evidence of any bad faith on plaintiffs' part with regard to their representations concerning the zoning, nor was there any evidence of unfairness or undue imposition during negotiations. Considering all the facts and circumstances of the case as a whole, the Court feels compelled to require the defendants to perform under the contract. The plaintiffs have performed their obligations under the contract to the best of their ability. Only if defendants' plans had borne fruit could the zoning classi-

fication have been finally resolved. To require plaintiffs to obtain a change in the zoning classification prior to the time defendants finalized their plans would be tantamount to requiring performance of an impossible task. In light of the tenor of this opinion, it may be that plaintiffs' promise to zone for the specified purposes, could in the future become a viable legal right justifying a damage remedy if, in fact, a breach occurred through the conduct of plaintiffs.

As a second impediment to specific performance, defendants contend that plaintiffs are unable to convey a marketable title because access to the property was restricted. The Kansas Supreme Court has on numerous occasions defined what constitutes a marketable title. The most recent case is Johnson Bros. Furniture, Inc. v. Rothfuss, 186 Kan. 287, 349 P.2d 903 (1960), wherein a marketable title was defined as one which is "free from reasonable doubt, and a title is doubtful and unmarketable if it exposes the party holding it to the hazard of litigation." The Court stated that:

"To render [a] title . . . unmarketable, the defect . . . must be of a substantial character and one from which he may suffer injury. Mere immaterial defects which do not diminish in quantity, quality or value the property contracted for, constitute no ground upon which the purchaser may reject the title. Facts must be known at the time which fairly raise a reasonable doubt as to the title; a mere possibility or conjecture that such a state of facts may be developed at some future time is not sufficient."

Concededly, this limitation on access could render the land less valuable to the defendants, especially in view of their plans for development. However, the fact that limited access lowers the value of the property to defendants does not necessarily render the plaintiffs' title unmarketable. If resale of the property were hindered by the existence of the claimed defect or if defendants' enjoyment of the property were exposed to the hazards of litiga-

tion, then the limitation on access could be found to render the title unmarketable. Myrick v. Austin, 141 Kan. 778, 44 P.2d 266 (1935). The defect urged by defendants as rendering plaintiffs' title unmarketable is not in this Court's estimation the sort of defect contemplated by the Kansas courts as affecting marketability. The thrust of the law as it relates to marketability is directed towards the certainty or uncertainty of the vendor's title, not to the value of the property to the purchaser. 92 C.J.S. Vendor & Purchaser § 191. Moreover, the evidence offered by defendants did not attempt—other than its conclusionary assertion—to show either any legal uncertainty of title or diminution of value.

In addition, and probably most important, the defect complained of by defendants was a matter of public record as shown by the abstract of title admitted during the trial. Moreover, plaintiffs' Exhibits 9 and 12, which depict the road leading onto the property, which was in existence at the time of the contract, are sufficient to establish that defendants were aware of the limited access, or should have had knowledge of its existence. As a general rule, a purchaser who has actual or constructive knowledge of a defect or of an encumbrance at the time he enters the contract cannot refuse to perform his obligations. 92 C.J.S. Vendor & Purchaser § 188. Accordingly, even if the limitation on access were such a defect as would render the plaintiffs' title unmarketable, defendants' knowledge of its existence in this case precludes denial of specific performance.

Evidence was introduced at the trial of the readiness, willingness, and ability of the defendants to perform financially their part of the contract as vendees. Further, conflicting evidence was offered and permitted to be introduced concerning whether the described property at time of trial had increased or decreased in value since the December 1, 1969 completion date. In view of the bases of decision heretofore made,

such evidence was considered by the Court as immaterial and extraneous to the issues extant in the case.

It is therefore ordered that judgment be entered by the Clerk in favor of the plaintiffs and against the defendants herein, as provided in the foregoing Conclusions of Law, without further journal entry.

## EXHIBIT A

### PROPOSAL TO LEASE WITH RIGHTS OF REAL ESTATE PURCHASE AGREEMENT

We, Laurence R. Jones, and Richard F. Sandifer, Tenant-Buyers, hereby agree to lease with an agreement to purchase, through Herbert V. Jones & Company, of Kansas City, Missouri, certain land located in Riley County, State of Kansas, belonging to H. Reed Dusenbery and LaVerna Dusenbery, husband and wife, Landlord-Sellers, said land described as follows:

A tract of land in the NE ¼ Sec. 25–T9S–R7E of the 6th P.M., and more particularly described as follows:

From the pin marking the N ¼ Cor. said Sec. 25 proceed South along the line to the stone marking the SW Cor. of the N ½ of NE ¼ said Sec. 25 a distance of 337.43 ft. to a pin on the southerly R/W line of K–13 (1961) said pin being the point of beginning, thence S 58° 13′ E 225.24 ft. to a pin on said R/W thence S 51° 54′ E 194.35 ft. to a pin on said R/W thence S 45° 37′ E 188.65 ft. to a pin on said R/W thence S 40° 01.5′ E 188.-32 ft. to a pin on said R/W thence S 34° 47.5′ E 66.50 ft. to a pin on said R/W thence S 32° 05′ E 198.23 ft. to a pin on said R/W thence S 30° 45′ E 251.85 ft. to a pin on said R/W thence S 89° 24.5′ W 871.95 ft. to the stone marking the SW Cor. N ½ of NE ¼ Sec. 25, thence North 162.00 ft. along the line to said N ¼ Cor. to a stone set this survey, thence North 800.69 ft. to the point of beginning

and containing 11.57 acres, more or less, all in Riley County, Kansas.

On the Following Terms and Conditions: The lease is to be for a term of Five (5) years (60 months), unless sooner terminated during the last Four (4) years of said lease, by the purchase of said land as herein agreed to, beginning December 1, 1964 and ending November 30, 1969, at an annual rental of Three Thousand and No/100 Dollars ($3,000.00), payable in equal monthly installments of Two Hundred Fifty and No/100 Dollars ($250.00) on the first day of each and every month during the full term of this contract.

Said rent to be net, net to the Landlord-Sellers with the real estate taxes, general and special, together with all insurance that may be required being paid for by the Tenant-Buyer.

Said lease shall contain a clause that will require the Tenant-Buyer to buy said real estate at any time during the last Four (4) years of this lease for the price of Fifty Thousand and No/100 Dollars ($50,000.00) to be paid in the following manner: Five Thousand and No/100 Dollars ($5,000.00) to be paid as earnest money on said purchase and shall be deposited with Herbert V. Jones & Company concurrent with tenant-buyer's notice to Landlord-Sellers of the Tenant-Buyer's will purchase said real estate, and the balance (Forty-Five Thousand and No/100 Dollars) of said purchase price, shall be paid by Tenant-Buyer to Landlord-Sellers upon Sellers delivery of a general warranty deed.

The Landlord-Seller agrees to deliver a warranty deed warranting a good and merchantable title to said land to the Tenant-Buyer upon receipt of the toll purchase price with said title insured through the Kansas City Title Insurance Company in the full amount of the purchase price.

Possession to said real estate to be delivered at the signing of the lease.

Lease shall contain a clause that tenant-Buyer may use these premises for

any legitimate business allowable under zoning and the local laws, (if land is not already zoned) to permit the operation of:

1. Motor Hotel
2. Marina
3. Bait and Tackle Shop
4. Sale of Boats and Boat Storage
5. Grocery Store
6. Restaurant

and other miscellaneous recreational services that would be customary in this sort of location.

If land is not now properly zoned, the Landlord-Seller agrees to have the real estate properly zoned to permit the operation of any or all of the aforementioned businesses.

Tenant-Buyer shall deposit with Herbert V. Jones & Company at the signing of the lease, as security for the faithful performance of said lease, the sum of Two Hundred Fifty and No/100 Dollars ($250.00) which amount is to apply as rent for the first month of said lease.

The Landlord-Seller agrees that said lease shall contain a clause which will provide for the subordination of said real estate to a mortgage loan that may be placed on said improvements and said real estate for the purpose of constructing such permanent type of structures as may be required in the operation of any of the aforementioned businesses.

(s) Laurence R. Jones, Jr.
Tenant-Buyer

Dated: October 9, 1964

We, H. Reed Dusenbery and LaVerna Dusenbery, husband and wife, each in his and her own right and as the spouse of the other, herein called the Landlord-Seller owner of the above property, hereby agree to accept the above proposition and agree to make a lease together with the rights of purchase as outlined above and further agree that upon the acceptance of this contract to have said lease with rights of purchase promptly prepared, containing the above terms.

We, further agree to pay Herbert V. Jones and Company, Real Estate Brokers, the regular Kansas City Real Estate Board commission for negotiating said lease and regular Real Estate Board commission for negotiating said sale, said lease commission to be payable in cash at the execution of said lease, and the real estate commission payable in cash at the completion of such sale, less the lease commission aforesaid.

(s) H. Reed Dusenbery

(s) LaVerna Dusenbery
Landlord-Sellers

Signed in Triplicate

EXHIBIT B

PURCHASE AGREEMENT WITH LEASE PROVISIONS

This Agreement made and entered into by and between H. Reed Dusenbery and LaVerna Dusenbery, husband and wife, of Beatrice, Gage County, Nebraska, herein called the Seller, whether one or more, and Laurence R. Jones, Jr., and Richard F. Sandifor, herein called the Buyer, whether one or more; this document being an agreement to sell and purchase real estate with lease provisions contained therein and related to said real estate, Witnesseth that:

(1) Seller, in consideration of Fifty Thousand and no/100ths Dollars ($50,-000.00) to be paid as hereinafter provided and in consideration of the mutual covenants of the parties contained herein and contained in an instrument entitled "Proposal to Lease with Rights of Real Estate Purchase Agreement" executed by the parties hereto, October 9, 1964, hereby agrees to sell and convey and Buyer agrees to purchase the following described real estate, to-wit:

A tract of land in the NE ¼ Sec. 25–T9S–R7E of the 6th P.M., and more particularly described as follows:

From the pin marking the N ¼ Cor. said Sec. 25 proceed South along the line to the stone marking the SW Cor. of the N ½ of the NE ¼ said Sec. 25 a distance of 337.48 ft. to a pin on the

southerly R/W line of K–13 (1961) said pin being the point of beginning, thence S 58° 13′ E 225.24 ft. to a pin on said R/W thence S 51° 54′ E 194.35 ft. to a pin on said R/W thence S 45° 37′ E 188.65 ft. to a pin on said R/W thence S 40° 01.5′ E 188.32 ft. to a pin on said R/W thence S 34° 47.5′ E 66.50 ft. to a pin on said R/W thence S 32° 05′ E 198.28 ft. to a pin on said R/W thence S 30° 45′ E 251.85 ft. to a pin on said R/W thence S 89° 24.5′ W 871.95 ft. to the stone marking the SW cor. N ½ of NE ¼ Sec. 25, thence North 162.00 ft. along the line to said N ¼ Cor. to a stone set this survey, thence North 800.69 ft. to the point of beginning and containing 11.57 acres, more or less, all in Riley County, Kansas.

(2) The Buyer agrees to pay the above mentioned Fifty Thousand and no/100ths Dollars ($50,000.00) as follows:

The sum of Five Thousand and no/100ths Dollars ($5,000.00) to be paid by deposit with Herbert V. Jones and Company concurrent with Buyer's notice to Seller at some time in the period of from December 1, 1965, to December 1, 1969, and the balance of Forty-five Thousand and no/100ths Dollars ($45,000.00) shall be paid to Seller upon the Seller delivering to Buyer a general warranty deed for said real estate in that period;

and the Buyer agrees to close said sale and complete the same on or before December 1, 1969. In the closing of said transaction, the Seller agrees to furnish to Buyer title insurance in the full amount of the purchase price above insured through the Kansas City Title Insurance Company.

(3) From and after December 1, 1964, the Seller hereby leases to Buyer the said described real estate above on the terms and conditions hereinafter set forth. Buyer agrees as follows:

(a) To pay to Seller as rent for said premises the sum of Two Hundred Fifty and no/100ths Dollars ($250.00) per month commencing December 1, 1964, and in a like amount on the first day of each month thereafter during the term of this lease which shall extend to the date the Buyer completes the purchase of said real estate as described above.

(b) To use the premises during the term for no other purposes than any legitimate business allowable under zoning and the local laws to permit the operation of a motor hotel, marina, bait and tackle shop, sale of boats and boat storage, grocery store, restaurant, and other miscellaneous recreational services that would be customary in this sort of location.

(c) In addition to the cash rental provided hereinabove, the Buyer, during the term of the lease provisions herein, shall pay all real estate taxes, general and special, together with all insurance premiums that may be required during the term thereof.

(4) It is agreed by the Seller that the real estate herein described above may be subordinated to a mortgage loan that may be placed on said real estate for the purpose of constructing such permanent type of structures as may be required in the operation of any of the business enterprises referred to in sub-paragraph 3b above.

(5) It is mutually understood and agreed by the parties that the rentals provided herein bear no relationship to the purchase price of said real estate and in no way shall be applied as a credit thereto.

(6) It is further mutually understood and agreed by the parties hereto that if, after payment of the Five Thousand and no/100ths Dollars ($5,000.00) on the purchase price referred to above, the Buyer fails to consummate the transaction, the Seller, at his option, may retain all or any part of said Five Thousand and no/100ths Dollars ($5,000.00) as liquidated damages for such refusal or failure. Time is of the essence of this contract and the conditions herein contained.

(7) Possession of the premises described hereinabove shall be delivered to the Buyer on December 1, 1964.

(8) It is understood and agreed that the Seller holds title to said property as joint tenants and they are contracting herein as joint tenants in their execution of this agreement and in relation to the proceeds of sale described hereinabove as well as the rental provisions contained in this instrument.

In Witness Whereof the parties have hereunto set their hands this 7 day of November, 1964.

(s) H. Reed Dusenbery

(s) LaVerna Dusenbery
Seller

(s) Laurence R. Jones, Jr.

(s) Richard F. Sandifer
Buyer

STATE OF NEBRASKA } ss.
COUNTY OF LANCASTER

On this 5th day of November, 1964, before me the undersigned, a Notary Public duly commissioned and qualified for in said county, personally came H. Reed Dusenbery and LaVerna Dusenbery, husband and wife, to me known to be the identical persons whose names are affixed to the foregoing instrument and they acknowledged the execution thereof to be their voluntary act and deed.

Witness my hand and Notarial Seal the day and year last above written.

(s) Carolyn Rolland
Notary Public

STATE OF MISSOURI } ss.
COUNTY OF JACKSON

On this 7th day of November, 1964, before me the undersigned, a Notary Public duly commissioned and qualified for in said county, personally came Laurence R. Jones, Jr., to me known to be the identical person whose name is affixed to the foregoing instrument and he acknowledged the execution thereof to be his voluntary act and deed.

Witness my hand and Notarial Seal the day and year last above written.
My commission
expires: March 27, 1965

(s) Winifred Ralston
Notary Public

STATE OF MISSOURI } ss.
COUNTY OF JACKSON

On this 7th day of November, 1964, before me the undersigned, a Notary Public duly commissioned and qualified for in said county, personally came Richard F. Sandifer, to me known to be the identical person whose name is affixed to the foregoing instrument and he acknowledged the execution thereof to be his voluntary act and deed.

Witness my hand and Notarial Seal the day and year last above written.

(s) Winifred Ralston
Notary Public

My commission
expires: March 27, 1965