(105 P.3d 720)
No. 92,450

THELMA LOUISE SCHLUP, *Appellee*, v. JOHN BOURDON and
ALICE BOURDON, *Appellants*.

Opinion filed February 11, 2005.

*John C. Chappell*, of Lawrence, for appellants.

*Price T. Banks*, of Lawrence, for appellee.

Before GREEN, P.J., PIERRON and MCANANY, JJ.

MCANANY, J.: John Bourdon and Alice Bourdon appeal from the district court's grant of a permanent injunction preventing them from disconnecting Thelma Louise Schlup's residence from the natural gas well located on their land. Because the Bourdons purchased their property, including the gas well, with no notice of Schlup's claimed interest in the gas well, we reverse and remand the case for vacation of the permanent injunction.

The facts are essentially undisputed. Marvin Smith owned 40 acres of land in rural Douglas County near Baldwin City. In 1986 he leased 10 acres in the southwest quadrant of the property to Midland Enterprises for the drilling of a gas well. The well proved not to be commercially productive, so in 1987 Midland Enterprises abandoned it to Smith for his personal use.

In 1988 Smith entered into a contract for deed to convey 7.2 acres in the northeast quadrant of his property to Victor and Thelma Louise Schlup, husband and wife. The contract included a provision that Smith agreed to provide the Schlups with free natural gas so long as the gas well on Smith's property supplied

sufficient gas for both Smith's and the Schlups' homes. The contract further provided: "It is mutually agreed that all covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators, successors and assigns of the respective parties."

The contract for deed was not recorded at the time. Instead, an affidavit of equitable interest was recorded in 1988 that gave notice of the Schlups' interest in the property they were acquiring but not their interest in free gas from the well.

In 1997 the Schlups recorded Smith' conveyance to them of a permanent 12-foot-wide easement that gave them access to their property over a portion of Smith's remaining property. Once again, the recorded document made no mention of their interest in the gas well.

A month later, in December 1997, apparently upon completion of the payments due under the contract for deed, the deed to the Schlup property was released from escrow and recorded. The deed made no mention of the Schlups' interest in the gas well on Smith's property.

In October 2000, John and Alice Bourdon contracted to buy the remaining portion of the Smith property from Doris Smith, who apparently succeeded to the interest of Marvin Smith in the property. The Smith property included a home, detached garage, an old barn, ponds, and the gas well. The gas well is about 200 feet from the house on the Smith property. The house on the Schlup property is over ¼ mile away to the northeast. The gas pipes that lead to the two houses are underground. The piping at the wellhead includes two valves, both in the "on" position. But since there are also gas outlets in the detached garage and barn on the Smith property and no visible evidence of a gas line running to the opposite end of the property, the Bourdons were not put on notice of the Schlups' use of gas from the well.

Smith's real estate agent told the Bourdons that the gas well provided gas for their home, but did not inform them that anyone else had an interest in the well. Doris Smith did not inform the Bourdons of any other interest in the gas well. Alice Bourdon claimed that she and her husband were not familiar with gas wells

and they did not see anything that would suggest another interest in the well. A title search disclosed no other interests in the well. The sale to the Bourdons was consummated in November 2000.

In the fall of 2002, the Bourdons observed Schlup's grandson near the gas well and learned for the first time that the Schlup property was being supplied gas from the well. In November 2002, the Bourdons advised Thelma Louise, who apparently succeeded Victor to the entire interest in the property, that they would terminate her gas supply on December 31, 2002.

In January 2003, long after the Bourdons had acquired their property from Smith, Schlup filed the old 1988 contract for deed. The attempts of the parties to reach a settlement proved unsuccessful, and in July 2003, Schlup filed suit and obtained a temporary restraining order (TRO) against the Bourdons to prevent them from cutting off her gas supply. The court then converted the TRO into a temporary injunction and ultimately made its injunction permanent in April 2004. The Bourdons' appeal now brings the matter before us.

Our standard of review in a case such as this is stated in *Persimmon Hill First Homes Ass'n v. Lonsdale*, 31 Kan. App. 2d 889, 892, 75 P.3d 278 (2003):

"The granting of an injunction is equitable in nature and involves the exercise of judicial discretion. Absent manifest abuse of that discretion, an appellate court generally will not interfere. [Citation omitted.] Where an appeal frames issues of law, however, including the threshold legal requirements for injunctive relief in a specific case, a de novo standard of review applies. [Citations omitted.]"

With respect to interpretations of statutes, these are questions of law over which we have unlimited review. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

*Notice*

The statutory scheme for imparting notice of interests in real property is straightforward. K.S.A. 58-2221 states in relevant part:

"Every instrument in writing that conveys real estate, any estate or interest created by an oil and gas lease, or whereby any real estate may be affected, proved or acknowledged, and certified in the manner hereinbefore prescribed, may be recorded in the office of register of deeds of the county in which such real estate is situated."

K.S.A. 58-2222 states:

"Every such instrument in writing, certified and recorded in the manner here-inbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

K.S.A. 58-2223 states:

"No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record."

Here, the district court mistakenly held that K.S.A. 58-2223 had no bearing on the case because "[a]ll instruments relevant to the case were properly recorded prior to the filing of the current suit." While the 1988 contract for deed was ultimately recorded in 2003 after the Bourdons advised Schlup of their intent to cut off her gas, it was not of record when the Bourdons purchased their property in 2000. As made clear in K.S.A. 58-2223, the 1988 unrecorded contract for deed was valid only between Smith and the Schlups when the Bourdons purchased their property in 2000 without notice of the Schlups' interest. The late filing of the contract for deed has no retroactive application. K.S.A. 58-2222 provides that the recording of an instrument gives notice to the world of its contents only from the time of filing.

The next question is whether K.S.A. 58-2223 applies to covenants running with the land, such as Schlup's claimed interest in the gas well. Schlup, relying on *Southworth v. Perring*, 71 Kan. 755, 760, 81 Pac. 481, *reh. denied* 71 Kan. 761 (1905), contends that it does not.

First, it is clear that a covenant to provide free gas in an oil and gas lease is a covenant that runs with the surface estate. *Jackson v. Farmer*, 225 Kan. 732, 737-38, 594 P.2d 177 (1979). The covenant for free gas in Schlup's contract for deed likewise runs with the land. That was the express intent of the parties in the portion of the contract quoted above.

In *Persimmon Hill*, which involved a restrictive covenant, the court stated:

"The enforceability of restrictive covenants has its origin in common law and has long been recognized in the state of Kansas. [Citation omitted.] Enforceability is based on the equitable principal of notice, whereby a person who takes land with notice of a restriction upon it will not be permitted to act in violation of that restriction. [Citation omitted.] Persons who take real property with notice of restrictive covenants will not be permitted to act in violation thereof, and may be enjoined in equity. [Citation omitted.]" 31 Kan. App. 2d at 892.

Thus, it is clear that those taking land subject to a restrictive covenant must have notice before the restriction can be enforced against them. Our case does not involve a negative covenant restricting the use of land but an affirmative covenant to provide gas. In practical effect this is a distinction without a difference when it comes to enforcing the covenant against third-party successors in interest. As noted in 21 C.J.S., Covenants § 25:

"In order for a covenant to run with the land, the grantor and grantee must intend that the covenant run with the land, that the covenant touch and concern the land, and that there be privity of estate between the original parties to the covenant, the original parties and the present disputants, or between the party claiming the benefit of the covenant and the party who rests under the burden.

"In addition, the covenant must be in writing, must have been enforceable between the original parties, and the successor to the burden must have notice."

In *Inwood North Homeowners' Ass'n v. Harris*, 736 S.W.2d 632 (Tex. 1987), and *Chimney Hill Owners' Assoc., Inc. v. Antignani*, 136 Vt. 446, 392 A.2d 423 (1978), homeowners associations sued homeowners for past due assessments that were required under covenants recorded with the appropriate register of deeds. In both cases, the court noted that notice was an element that must be shown in order to enforce a covenant running with the land. *Inwood North*, 736 S.W.2d at 635; *Chimney Hill*, 136 Vt. at 454-55. Without notice, a property owner is not bound to the affirmative duty to pay homeowners association dues, just as without notice a property owner should not be obligated to provide free gas to an adjoining property owner. The reasoning of these cases conforms with the notice provisions of K.S.A. 58-2223.

The district court found otherwise, relying on *Southworth*, 71 Kan. 755. In *Southworth*, two adjoining landowners entered into a written contract that allowed one of them to construct a building that had one of its walls on the property line. Under the contract,

when the other landowner constructed a building and used the preexisting wall, that owner would have to pay half of the cost of the wall to the other landowner. The contract concluded by stating: " 'The parties hereto bind and obligate their heirs, executors, administrators and assigns to the fulfillment of all the terms and covenants of this agreement.' " 71 Kan. at 755. The building was erected, and the other landowner never made use of the party wall. Both contracting landowners then conveyed their lands to other parties.

After the lands had been conveyed, the defendant, who had purchased the land without the building, constructed a building using the preexisting wall. The plaintiff, who had purchased the land with the building, demanded payment for one-half the cost of the wall. The plaintiff brought suit to enforce the contract. In its analysis, the *Southworth* court quoted 89 Am. St. Rep. 941 and stated:

> " 'It seems to us that the more reasonable rule is that an agreement between the owners of adjoining premises, whereby one is to build a party wall, one-half on the land of each, and the other to pay for one-half of its construction when he uses the wall, creates cross-easements as to each owner, running with the land, *with or without notice to the grantee*, and is binding on all persons succeeding to the estates to which such easement is appurtenant, and that a purchaser of the estate of an owner so contracting must be required to pay one-half of the cost of the wall, if it is unpaid for at the time of his purchase, and he afterward avails himself of its benefits.' " 71 Kan. at 760. (Emphasis added.)

In *Southworth*, the issue of notice was not in issue. Therefore, the language quoted by the *Southworth* court was dicta and not binding on this court. See *In re Estate of Hessenflow*, 21 Kan. App. 2d 761, 766, 909 P.2d 662 (1995), *rev. denied* 259 Kan. 928 (1996). Further, finding that notice is not necessary to bind a successor to the burden of a covenant running with the land is directly contrary to K.S.A. 58-2223. And, finally, our Supreme Court has not so construed *Southworth*. In *Johnson Bros. Furniture Co. v. Rothfuss*, 186 Kan. 287, 292-93, 349 P.2d 903 (1960), another party wall case, the court stated:

> "Moreover, it is to be noted, that in the same agreement . . . the parties mutually agreed that the benefits and obligations of all covenants therein set forth should be annexed to and run with the land therein described. *Since such agreement was acknowledged and recorded* this, under our decisions (see, *e.g., Beloit Bldg. Co.*

*v. Quinn*, 145 Kan. 507, 66 P.2d 549; *Comfort v. Lynch*, 118 Kan. 40, 42, 233 P. 1042; *Southworth v. Perring*, 71 Kan. 755, 756, 761, 81 Pac. 481, rehearing denied in 71 Kan. 761, 81 Pac. 785), means subsequent purchasers . . . would take title thereto subject to, and be bound by, the terms and conditions of that instrument." (Emphasis added.)

Thus, *Southworth* does not support the proposition that a covenant running with the land is binding upon successors in interest who have no notice of the covenant.

*Doctrine of Merger*

Finally, the Bourdons claim the district court erred in determining that the contract for deed did not merge with the deed. The doctrine of merger was explained in *Blair Constr., Inc. v. McBeth*, 273 Kan. 679, 686, 44 P.3d 1244 (2002):

"It is a general rule of law applicable to all contracts, including deeds, that prior stipulations and agreements are merged into the final and formal contract or deed executed by the parties. When a deed is delivered and accepted as performance of a contract to convey, the contract is presumed to be merged into the deed. [Citations omitted.]"

The Bourdons assert the doctrine of merger because if the contract for deed merges into the deed and the deed does not refer to the provision for free gas, then the inference is that the provision in the contract for free gas was waived and superseded by the deed. See *Palmer v. The Land & Power Co.*, 172 Kan. 231, 237, 239 P.2d 960 (1952). As stated in *Blair Constr.*, merger is not absolute and whether merger occurs depends on the intention of the parties— a question of fact which must be determined from examining the instruments and the surrounding circumstances. 273 Kan. at 686. Thus, we must examine the record to determine if substantial competent evidence exists to support the district court's finding that merger did not occur. See *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 774-75, 69 P.3d 1087 (2003).

Here, the deed did not contain the free gas provision that was contained in the contract for deed. Thus, the presumption is that the free gas provision was waived and superseded by the deed. However, the district court held that the parties intended the free

gas provision to continue in effect after the deed was executed and, therefore, merger did not occur.

The district court noted that the Schlups continued to receive free gas from the Smith well for 12 years after execution of the deed and before the Bourdons acquired the Smith property. This was clearly the case and constituted clear evidence that the parties intended the free gas provision to not merge into the deed and thereby end. Substantial evidence exists to support the district court's opinion on this issue.

In conclusion, while the provision for free gas survived the deed to the Schlups, since the deed imparted no notice to the world of their interest in gas from the well, it was not binding upon and enforceable against the Bourdons who later purchased the Smith property.

Reversed and remand with directions to vacate the permanent injunction.